**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jason Allen MILLER, Defendant–Appellant.**

**No. 97–50417.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 7, 1998.

Decided Aug. 5, 1998.

Steven F. Hubachek, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Sandra G. Moses, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

---

Before: FLETCHER, FERNANDEZ and RYMER, Circuit Judges.

RYMER, Circuit Judge:

We must again decide whether a defendant has to disclose all that he knows about relevant conduct that is part of the same course of conduct or common scheme as the offense for which he was convicted in order to qualify for the "safety valve" under 18 U.S.C. § 3553(f).

We held in *United States v. Washman*, 128 F.3d 1305 (9th Cir.1997), that a defendant must do so, but we declined to address a statutory argument that Washman waived but Miller now makes: that use of the term "offense or offenses" limits the disclosure required to the offense of conviction.[1] Because § 3553(f)(5) on its face requires disclosure "concerning the offense or offenses *that were part of the same course of conduct or of a common scheme or plan*," it plainly includes uncharged related conduct. 18 U.S.C. § 3553(f)(5) (emphasis added). We therefore reject Miller's statutory argument, and again hold as we did in *Washman* that a defendant who does not disclose all information he has concerning offenses that were part of the same course of conduct is not entitled to safety valve relief.

As there is no other reversible error, we affirm.

I

At 2:10 a.m. on February 10, 1997, Miller and Luis Alberto Romo–Balderas were contacted by Custom Service agents about a mile north of the water border between United States and Mexico. They were on board a 15-foot Quicksilver inflatable vessel that had been surveilled by Customs agents for about an hour. The vessel was operated without lights and without any registration numbers or other means of identification. When agents stopped the vessel, they saw Miller and Romo dressed in wetsuits, throwing large bags from the vessel into the water. Agents recovered a total of seven U.S. Army duffel bags, five from the vessel and two from the water. The duffel bags contained approximately 457.73 kilograms (about a thousand pounds) of marijuana.

On March 26, 1997, Assistant U.S. Attorney Sandra G. Moses and law enforcement agents met with Miller pursuant to the standard proffer agreement of the United States Attorney's Office. The agreement promised that the government would not use any information provided by Miller in the proffer session against him at sentencing except to rebut evidence offered by Miller. During the course of the proffer session, Miller admitted to six successful smuggling ventures for a group in Mexico as well as two dry runs in which the marijuana did not show up. Miller explained his involvement in each, but refused to identify key participants in these ventures because he was afraid for himself and his family. Miller also contended that the smuggling venture for which he was arrested was not for the same group, but the modus operandi was essentially the same.

Miller eventually pled guilty to conspiracy to import marijuana, 21 U.S.C. §§ 952 and 960. The district court held that to qualify for safety valve, Miller had to be fully candid not just about the offense of conviction, but all relevant conduct, including the prior smuggling ventures. The district court also held that the government could properly use Miller's statements from the proffer session to rebut his claim that, based on the record, he qualified for safety valve relief and role adjustment.

It then declined to grant safety valve or role adjustment relief. The court added two points to Miller's base offense level pursuant to USSG § 2D1.1(B)(2)(b) because Miller acted as a pilot of a vessel carrying contraband, deducted three points for acceptance of responsibility, and departed downward two additional levels for extraordinary acceptance

---

**1.** Miller's theory is taken from the dissenting opinion of Judge Norris in *Washman*, 128 F.3d at 1308–10.

of responsibility. As Miller's total offense level came to 25 in Criminal History Category I, he was sentenced to the minimum mandatory term of 60 months imprisonment and four years of supervised release under 21 U.S.C. § 960(b).

Miller timely appealed.

## II

■ · Miller argues that his disclosures regarding the offense of conviction are adequate to trigger application of USSG § 5C1.2. Section 5C1.2 implements § 3553(f) and the two, which are identical, provide that a court shall impose a sentence without regard to any statutory minimum if five requirements are met. The requirement at issue here is the fifth, which requires truthful disclosure of all information "concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan."[2] USSG § 5C1.2(5). Miller submits that the ordinary meaning of the term "offense" is more consistent with a meaning that requires conviction than with one that embraces unconvicted or uncharged conduct. He finds support for this construction from the use of the term "offense" in the first paragraph of § 3553(f) in a context that indicates Congress was referring to the offense of conviction; the same term in subparagraph (f)(5), he contends, should be construed the same. Further, Miller maintains, the language in § 3553(f)(5) is similar, but not identical to that employed in the Guidelines's definition of relevant conduct in USSG § 1B1.3(a)(2), from which he concludes that Congress must have intended a different (and more restrictive) meaning in the safety valve provision.[3]

We think § 3553(f)(5) clearly indicates what it includes. It says that the defendant has to tell all he knows concerning "the offense or offenses that were part of the same course of conduct or of a common scheme or plan." This means that the defendant must provide all the information that he has about his offense of conviction *and* about offenses that were part of the same course of conduct or common scheme. Otherwise the modifier, "that were part of the same course of conduct or of a common scheme or plan,"

2. Section § 5C1.2 and § 3553(f) provide that "in the case of an offense under [21 U.S.C. § 841] ... the court shall impose a sentence" in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
(3) the offense did not result in death or serious bodily injury to any person;
(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and
(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination

by the court that the defendant has complied with this requirement.

3. Section 1B1.3(a)(2) defines relevant conduct for purposes of determining the guideline range as

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction.

Subdivisions (1)(A) and (1)(B) indicate that the base offense level shall be determined on the basis of

(1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

would be superfluous. If Congress had intended to limit disclosures to the offense of conviction, it could easily have said so.

Nor are we impressed with Miller's suggestion that "offense" necessarily connotes "conviction." It doesn't. Any infraction is an offense, whether one is caught or not. But regardless of that, under the Guidelines, "offense" means the offense of conviction and all relevant conduct. *See* USSG § 1B1.1(*l*) comment. (n.1(*l*)). This is something that Congress must have known when the safety valve was enacted. So, even if Miller were correct that "offense" is always the offense of conviction, the disclosure that is required includes relevant conduct. That the first sentence of § 3553(f) provides "in the case of an offense under [specified laws] the court shall impose a sentence ... without regard to any statutory minimum" does not suggest otherwise. It is unremarkable for "offense" here to be used in the context of conviction because the safety valve is obviously not implicated unless there is a conviction under one of the specified statutes. In any event, to the extent that Miller argues that the statute has to be construed his way because a court cannot "impose a sentence" for unconvicted conduct, we disagree since the court is not imposing a sentence for unconvicted crimes if it applies the safety valve only where the defendant provides information regarding relevant conduct beyond the offense of conviction. Section 3553(f) simply prescribes relief from the mandatory minimum if its conditions are met. Whether met or not, the sentence that is then fashioned does not subject the defendant to punishment on account of the prior (unconvicted) conduct that he has disclosed; to the contrary, the disclosure obliges the court to impose sentence without regard to the sentence that would otherwise be required.

Neither are we persuaded that it matters that the "same course of conduct" or "common scheme or plan" language is used in USSG § 1B1.3(a)(2) and § 3553(f)(5) but USSG § 1B1.3(a)(2) talks in terms of "all acts or omissions" that are part of the same course of conduct or common scheme while § 3553(f)(5) talks in terms of "the offense or offenses" that are. As we have explained, the text seems clear enough to us. In any event, Miller's argument assumes that Congress *chose* to import part of the language from § 1B1.3(a)(2), but not all of it. Yet nothing in the legislative history suggests that Congress actually borrowed the "same course of conduct or common scheme or plan" language from § 1B1.3(a)(2) (which defines relevant conduct for purposes of grouping multiple counts under § 3D1.2(d)), let alone did so advisedly. For all we know, Congress may have borrowed "same course of conduct or common scheme or plan" from Application Note 9 to § 1B1.3, which contains no hint of limitation to the offense of conviction but does talk in terms of two or more offenses as they may relate to each other and to the offense of conviction.[4] In short, the legislative history sheds no light on what Congress intended by the language that ended up in § 3553(f)(5).

The Sentencing Commission itself has interpreted "offense or offenses that were part of the same course of conduct or of a common scheme or plan" as used in § 5C1.2(5)— and in turn, § 3553(f)(5)—to "mean the offense of conviction and all relevant conduct." USSG § 5C1.2, comment. (n.3). As we have explained, this is neither inconsistent with, nor a plainly erroneous reading of, the guide-

---

4. Application 9 to § 1B1.3 states, in relevant part:

"Common scheme or plan" and "same course of conduct" are two closely related concepts. (A) *Common scheme or plan:* For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*. ...

(B) *Same course of conduct.* Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses. Factors that are appropriate to the determination of whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses.

line or statute. It is, therefore, authoritative. *Stinson v. United States,* 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). By the same token, Miller points to no authority for his position. In fact, other circuits agree that a defendant must disclose information beyond the offense of conviction to satisfy the safety valve. *See United States v. Gambino,* 106 F.3d 1105, 1111 (2d Cir.1997) (rejecting defendant's argument that he did not have to answer questions beyond the conspiracy period alleged and to which he pled guilty); *United States v. Adu,* 82 F.3d 119, 124 (6th Cir.1996) (stating that the safety valve provisions "clearly require an affirmative act by the defendant truthfully disclosing all the information he possesses that concerns his offense and related offenses" and upholding district court's refusal to apply the safety valve where the defendant did not provide complete information concerning other offenses); *United States v. Long,* 77 F.3d 1060, 1062–63 (8th Cir.1996) (district court did not err in refusing to apply safety valve where defendant did not truthfully provide all information relevant to the "same course of conduct or ... a common scheme or plan" of drug trafficking), *cert. denied,* — U.S. ——, 117 S.Ct. 161, 136 L.Ed.2d 104 (1996); *see also United States v. Arrington,* 73 F.3d 144, 149 (7th Cir.1996) (stating that § 3553(f) requires a defendant to disclose " 'all information' concerning the course of conduct-not simply the facts that form the basis for the criminal charge"); *United States v. Sabir,* 117 F.3d 750, 753 (3rd Cir.1997) (the safety valve under USSG § 5C1.2 requires a defendant to reveal a broader scope of information than required for acceptance of responsibility relief under USSG § 3E1.1). We see no reason to part company in this case, for Miller admitted to extensive drug smuggling in a short period of time with the same modus operandi as the offense of conviction, but refused to provide full information about the participants.

To accept Miller's construction would deprive the safety valve of all meaning. We therefore conclude that there is no basis for not following the rule announced in *Washman.* Having now considered the theory of statutory interpretation that we declined to consider there, we reaffirm that a defendant has to disclose all that he knows about offenses, including relevant conduct, that are part of the same course of conduct or common scheme as the offense for which he was convicted, in order to qualify for the "safety valve" under 18 U.S.C. § 3553(f). Since Miller does not dispute that the disclosures he decided not to make were part of the same course of conduct, the district court did not err in denying the relief he requested.

### III

Miller next argues that the district court erred by permitting the government to disclose and use information obtained during a proffer session in contravention of the proffer agreement to deny him safety valve relief and a role adjustment.

The proffer agreement (apparently standard at the time in the United States Attorney's Office for the Southern District of California) provides:

3. I understand that should any prosecutions be brought against me by the United States Attorney's Office, the Government will not offer in evidence in its case-in-chief, or in connection with any sentencing proceeding for the purpose of determining an appropriate sentence, any statements made by me during the proffer, except in a prosecution for false statements, obstruction of justice or perjury with respect to any acts committed or statements made during or after the proffer meeting or testimony given after the proffer meeting.

4. Notwithstanding Item 3 above: (a) the Government may use information derived directly or indirectly from the meeting for the purpose of obtaining leads to other evidence, which evidence may be used in any prosecution of me by the Government; and (b) the Government may use statements made by me at the meeting and all evidence obtained directly or indirectly therefrom for the purpose of cross-examination should I testify in any proceeding, or to rebut any evidence offered by or on my behalf in connection with the trial and/or sentencing, should any prosecution of me be undertaken.

Miller's view is that the government could only use his statements to rebut "evidence" that he offered at sentencing, and that he offered none. He points out that he did not call witnesses or introduce physical evidence, rather all he did was request relief under the safety valve. That, he says, is not "evidence offered" which the government was entitled to "rebut."

While it is true that Miller did not introduce new evidence at the sentencing hearing, he did rely on his own written statement about the offense of conviction that he provided to the Probation Officer and that was part of the Presentence Report. He had the burden of proving that he was entitled to relief, *see United States v. Ajugwo,* 82 F.3d 925, 929 (9th Cir.1996) (safety valve), *cert. denied,* —— U.S. ——, 117 S.Ct. 742, 136 L.Ed.2d 680 (1997); *United States v. Sanchez,* 908 F.2d 1443, 1449 (9th Cir. 1990) (role adjustment), and he tried to do so by showing that he had told the Probation Officer what he knew about the offense. The government countered with what Miller had disclosed—and what he hadn't disclosed—during the meeting. Under these circumstances, we agree with the district court that the government's response was within the scope of the proffer agreement.

Miller's statement was "evidence" that he used to show he qualified for relief. Without it, he wouldn't have had a prayer. Under the terms of the agreement, which we interpret as we would a contract, *see United States v. Chiu,* 109 F.3d 624 (9th Cir.1997), the government could "rebut" this statement by showing that it was not a full and truthful disclosure of all information and evidence Miller had concerning the offenses that were part of the same course of conduct. It did so by using information that Miller had provided during the meeting.

Miller suggests that "evidence offered" is ambiguous and that we should construe it against the government under *United States v. Plummer,* 941 F.2d 799, 804 (9th Cir.1991). However, for *Plummer* to apply, both parties' interpretation must "lie[ ] within the zone of reasonableness." *Id.* 941 F.2d at 804. We do not believe that Miller's lies within that zone, for under his interpretation a defendant could point to statements already in the record to qualify for role and safety valve

relief without the government being able to use evidence from a proffer session directly controverting the defendant's entitlement to relief. In this situation, defendants effectively would have an uncontested right to sentence reduction, and that is an unreasonable construction. The provision in the agreement allowing the government to rebut evidence offered by the defendant at sentencing covers just the contingency that happened here, when Miller relied on his own statement that he had offered to the Probation Officer. The district court accordingly did not err in receiving the government's evidence rebutting that statement by Miller's statements at the proffer session.

IV

We need not address either of Miller's remaining arguments, seeking reversal of an enhancement under USSG § 2D1.1(b)(2)(B), and of the district court's failure to grant a role reduction under USSG § 3B1.2, because they are moot in light of our upholding the court's refusal to award safety valve relief. The district court sentenced to the mandatory minimum of 60 months, as it was bound to do, and to the statutory minimum of supervised release. Therefore both the enhancement and the downward adjustment are immaterial.

AFFIRMED.