**UNITED STATES of America, Plaintiff,**

v.

**Luis Ferne OLAVE–VALENCIA (1), Rene Al Chavarin–Carrillo (2), Aquilino Bonilla–Torres (3), Jose Elvi Mosquera (4), Jose Rebolledo–Estupinan (5), Sofonias Riascos–Riascos (6), Defendants.**

**No. 03CR2744BTM.**

United States District Court, S.D. California.

May 18, 2005.

Carol C. Lam, Michael F. Kaplan, Assistant United States Attorney, Carol M. Lee, Assistant United States Attorney, Office of the U.S. Attorney, San Diego, CA, Counsel for Plaintiff.

Kasha K. Pollreisz, Federal Defenders of San Diego, Inc., San Diego, Counsel for Defendant Luis Ferne Olave–Valencia.

William H. Burgener, Law Offices of William H. Burgener, San Diego, Counsel for Defendant Sofonias Riascos–Riascos.

Steven E. Feldman, Law Offices of Steven E. Feldman, San Diego, Counsel for Defendant Jose Rebolledo–Estupinan.

Kathryn T. Leff, San Diego, Counsel for Defendant Aquilino Bonilla–Torres.

Michael L. Crowley, San Diego, Counsel for Defendant Rene Al Chavarin–Carrillo.

## ORDER RE: AVAILABILITY OF SAFETY VALVE RELIEF UNDER 18 U.S.C. § 3553(f)

MOSKOWITZ, District Judge.

On September 13, 2003, the United States Coast Guard observed Defendants on board a unmarked "go fast" vessel jettisoning approximately 5000 pounds of cocaine into the Pacific Ocean after they had apparently detected the Coast Guard's helicopter. Defendants ignored the Coast Guard's command and refused to heave to. After a short pursuit and shots across the bow, a Coast Guard sharpshooter disabled the vessel's engine. A Coast Guard small boat was dispatched and officers boarded Defendants' vessel approximately 250 nautical miles from the Honduras/Coast Rica boarder. Defendants were transported to the United States and arrested by members of the San Diego Maritime Task Force.

On October 1, 2003, a grand jury indicted Defendants with one count of conspiring to possess cocaine on board a vessel with the intent to distribute in violation of 46 App. U.S.C. § 1903(a), (c), (j), and one count of possession of cocaine on board a vessel with the intent to distribute in violation of § 1903(a), (c)(1)(A), (f). On May 28, 2004, a jury found Defendants guilty on both counts.

In anticipation of sentencing, the United States Probation Office issued a pre-sentence report ("PSR") stating that Defendants' convictions carry a 120–month mandatory minimum sentence and that the safety valve provisions in 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2 do not apply to Defendants' conviction under 46 App. U.S.C. § 1903. (PSR at 10.) The government agrees with the PSR and contends that because the safety valve provi-

sions do not expressly list § 1903, safety valve relief does not apply to a § 1903 conviction. Defendants object to the PSR and argue that the safety valve applies because § 1903 incorporates the penalties in 21 U.S.C. § 960 and § 960 is expressly listed in § 3553(f) and § 5C1.2.

## I. STATUTORY BACKGROUND

■ Enacted in 1914, the Narcotic Drug Import and Export Act criminalized drug possession on board a vessel by a person "within the jurisdiction of the United States." Pub.L. No. 63–46, ch. 9, § 4, 38 Stat. 275, 276 (1914) (initially codified at 21 U.S.C. § 178). At the time, the jurisdiction of the United States included its "territorial sea," an area extending three nautical miles from the coastline. *See, e.g., Cunard S.S. Co. v. Mellon,* 262 U.S. 100, 122, 43 S.Ct. 504, 67 L.Ed. 894 (1923) ("[T]he territory subject to [United States] jurisdiction includes ... the sea extending from the coast line outward a marine league, or three geographic miles.").[1] In 1941 Congress first enacted legislation to prohibit the possession of narcotics on board United States vessels on the high seas. Act of July 11, 1941 ("1941 Act"), ch. 289, 55 Stat. 584 (initially codified at 21 U.S.C. § 184a) (repealed 1970). The 1941 Act's penalty provision provided for a maximum sentence of five years, *see id.,* exactly half of the ten-year maximum for drug possession on board vessels within United States territorial waters under existing law. *See* Act of May 26, 1922, ch. 202, § 1, 42 Stat. 596, 596 (repealed 1970). By 1956, drug possession on vessels in United States territorial waters and on the high seas were subject to the same penalty. *See* Narcotic Control Act of 1956, Pub.L. No. 84–728, ch. 629, §§ 105, 108, 70 Stat. 570 (1956) (amending 21 U.S.C. § 174, 184a) (repealed 1970).

In 1970 Congress enacted the Comprehensive Drug Abuse Prevention and Control Act ("Comprehensive Act"). Pub.L. No. 91–513, 84 Stat. 1291. The Comprehensive Act was "designed to replace all present law ... relating specifically to the importation and exportation of narcotic drugs and marihuana." H.R.Rep. No. 91–1444 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4566, 4638. As part of the Comprehensive Act, Congress enacted 21 U.S.C. § 955 which prohibited drug possession on board a vessel "arriving in or departing from the United States or the customs territory of the United States." Pub.L. No. 91–513, Title III, § 1005, 84 Stat. 1287 (1970) (codified as amended at 21 U.S.C. § 955). Section 955 expanded pre–1970 law by extending jurisdiction from the territorial sea, three nautical miles off the coastline, to the contiguous customs zone, located a further nine nautical miles seaward. *See id.; see also Rubies,* 612 F.2d at 403 (defining the territorial sea and contiguous customs zone). The Comprehensive Act also enacted 21 U.S.C. § 960 as the penalty provision for § 955 and other drug offenses. *See* Pub.L. No. 91–513, Title III, § 1010, 84 Stat. 1290 (1970) (codified as amended at 21 U.S.C. § 960).[2]

However, the Comprehensive Act repealed, without replacing, the 1941 Act's

---

**1.** Under international law, the waters off the coast of a sovereign are generally divided into three categories: (1) territorial sea; (2) contiguous customs enforcement zone; and (3) the high seas. *United States v. Rubies,* 612 F.2d 397, 403 (9th Cir.1979). "[T]he territorial sea extends three miles seaward .... Extending for yet another nine miles is the area commonly referred to as the contiguous cus-

toms enforcement zone.... The territorial sea together with the contiguous customs enforcement zone comprise what is commonly referred to as the '12–mile limit.' The high seas lie seaward of the territorial sea and therefore include the contiguous zone." *Id.*

**2.** 21 U.S.C. § 960(a) provides:
 Any person who—

prohibition of drug possession on board United States vessels on the high seas. *See* Comprehensive Act, Title III, § 1101(a)(2), (9), 84 Stat. 1291, 1292 (repealing 1941 Act); S.Rep. No. 96–855 (1980), *reprinted in* 1980 U.S.C.C.A.N. 2785, 2785 ("Th[e Comprehensive Act] inadvertently contained a section repealing the criminal provision under which drug smugglers apprehended on the high seas were prosecuted without creating a new provision to replace it."). "This oversight created a statutory void, resulting in an anomaly in the criminal law whereby possession of narcotics and dangerous drugs on U.S. territory and within the territorial sea is a Federal crime, while the same conduct on the high seas is not prohibited under existing law." H.R.Rep. No. 96–323, at 4–5 (1979). *See also* S.Rep. No. 96–855 (the "difficulties in drug enforcement stem from this statutory void which does not proscribe possession of controlled substances on the high seas, while such conduct is a crime in U.S. territory.").

In 1980, Congress filled the "statutory void" by enacting 21 U.S.C. § 955a, which prohibited drug possession on board certain vessels on the high seas. *See* Act of Sept. 15, 1980, Pub.L. No. 96–350, § 1, 94 Stat. 1159, 1160 (current version as amended at 46 App. U.S.C. § 1903 (1986)). Congress also provided that violations of § 955a were to "be punished in accordance with the penalties set forth in section 1010

(1) contrary to section 952, 953, or 957 of this title, knowingly or intentionally imports or exports a controlled substance, (2) contrary to section 955 of this title, knowingly or intentionally brings or possesses on board a vessel, aircraft, or vehicle a controlled substance, or (3) contrary to section 959 of this title, manufactures, possesses with intent to distribute, or distributes a controlled substance, shall be punished as provided in subsection (b) of this section.

of the Comprehensive Act [codified at 21 U.S.C. § 960]." *Id.* at § 1, (g)(1). Section 960 was the same penalty provision applicable to § 955, the statute prohibiting drug possession on board vessels in United States waters. Thus, with the enactment of § 955a, drug possession on board vessels was subject to the same penalty whether in United States waters or on the high seas.

The Anti–Drug Abuse Act of 1986 recodified § 955a as 46 App. U.S.C. § 1903. *See* Pub.L. No. 99–570, § 3202, 100 Stat. 3207 (codified as amended in 46 App. U.S.C. § 1903).[3] The changes focused on jurisdictional issues, *see United States v. Mazzaferro,* 907 F.2d 251, 253 (1st Cir. 1990) (describing that the statute "adds technical dimensions to the jurisdictional basis for conviction not present in 21 U.S.C. § 955a(a)"), and not the applicable penalty provision. Identical to § 955a(g)(1), § 1903(g)(1) provided that offenses under the section were to be "be punished in accordance with the penalties set forth in section 1010 of the Comprehensive Act [codified at 21 U.S.C. § 960]." *Compare* 21 U.S.C. § 955a(g)(1), *with* 46 App. U.S.C. § 1903(g)(1). The Anti–Drug Abuse Act also stiffened the § 960 penalty provision with the creation of mandatory minimums. *See* Pub.L. No. 99–570, § 1302 (codified at 21 U.S.C. § 960). Thus, *all* substantive offenses whose penalties were governed by § 960 were subject to mandatory minimums.

**3.** "Congress passed the Maritime Drug Law Enforcement Act provisions twice. The provisions codified at 46 U.S.C.App. §§ 1901–1904 were first enacted on October 27, 1986, by the Maritime Drug Enforcement Prosecution Improvements Act of 1986, Pub.L. 99–570, §§ 3201–3202, 100 Stat. 3207–95 to 3207–97." *United States v. Leuro–Rosas,* 952 F.2d 616, 619 n. 5 (1st Cir.1991). "Substantially identical provisions were reenacted November 10, 1986, by section 17 of the Coast Guard Authorization Act of 1986, Pub.L. 99–640, 100 Stat. 3552–3554." *Id.*

Thereafter, Congress recognized an "anomaly" resulting from the imposition of mandatory minimum sentencing. H.R.Rep. No. 103–460 (1994), 1994 WL 107571. For example, an offender whose sentence began near the established minimum could not fully utilize sentence reductions given the sentencing floor. *See id.* ("Ironically, however, for the very offenders who most warrant proportionally lower sentences—offenders that by guideline definitions are the least culpable—mandatory minimums generally operate to block the sentence from reflecting mitigating factors."). At the same time, a more culpable actor who received a sentence well above the established minimum could not employ mitigating factors to reduce his sentence to a level near the mandatory minimum. *See id.* ."This, in turn, mean[t] that the[ ] least culpable offenders [could] receive the same sentences as their relatively more culpable counterparts." *Id.*

Congress, therefore, enacted the Mandatory Minimum Sentencing Reform Act of 1994 ("Sentencing Reform Act"). Pub.L. No. 103–322, Title VIII § 80001(a), 108 Stat. 1985, 2095 (codified at 18 U.S.C. 3553(f) (1994)). The Sentencing Reform Act created a "safety valve" which allowed sentencing below established minimums for drug offenders meeting certain criteria. *See id.* As provided in § 3553(f), this safety valve only applies "to an offense under section 401, 404, 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846) or section 1010 or 1013 of the Controlled Substances Import and Export Act (21 U.S.C. 960, 963) ...." 18 U.S.C. § 3553(f). *See also* U.S.S.G. § 5C1.2 (same). The absence of express mention in § 3553(f) of offenses under 46 App. U.S.C. § 1903 gives rise to the issue before the Court.

## II. DISCUSSION

■ "The preeminent canon of statutory construction requires [the court] to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'" *BedRoc Ltd. v. United States*, 541 U.S. 176, 183, 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)). Thus, the " inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *Id.* (citing *Lamie v. United States Tr.*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004)).

### A. STATUTORY TEXT

■ Section 3553(f) expressly provides that the safety valve applies to "an offense under section ... 960." 18 U.S.C. § 3553(f); *see also* U.S.S.G. § 5C1.2 (same). Section 960(a) explicitly governs the penalties for convictions under sections 952, 953, 955, 957, and 959. As such, each of these offenses constitutes "an offense under section ... 960" in terms of § 3553 and are subject to safety valve relief. *See, e.g., United States v. Miller*, 151 F.3d 957, 961 (finding safety valve applicable to a § 952 conviction by virtue of its inclusion in § 960, but finding defendant ineligible on other grounds). However, these § 960(a) enumerated offenses are not an exhaustive list of the substantive offenses whose penalties are governed by § 960 and thereby qualify as "an offense under section ... 960" for the purposes of § 3553(f) safety valve relief.[4]

---

4. As the Ninth Circuit noted, "the wording of § 3553(f) [does not] support the argument that it contains anything other than an exhaustive list of the offenses to which the safety valve applies." *United States v. Kakatin*, 214 F.3d 1049, 1051 (9th Cir.2000). The Court's holding here is not to the contrary. Section 3553(f) on its face explicitly applies to an offense under § 960. Here, the Court simply finds, as it must under clear statutory language, that § 960(a) does not contain an

Section 1903(g)(1) also requires that "[a]ny person who commits an offense defined in ... section [1903] shall be punished *in accordance with* the penalties set forth in section 1010 of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. 960)." 46 App. U.S.C. § 1903(g)(1) (emphasis added). Thus, the plain meaning of the statute requires that sentences for § 1903 must conform with the penalties under § 960.[5] This means a § 1903 conviction—just as a conviction under section 952, 953, 955, 957, or 959 (as enumerated under § 960(a))—is not only subject to the mandatory minimum sentencing in § 960, but also to the safety valve relief applicable to § 960 by way of § 3553(f). *See K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole."). Denying safety valve relief to § 1903 convictions would thwart Congress' express objective by sentencing § 1903 convictions differently than, rather than *in accordance with,* § 960. *Cf. United States v. Rendon,* 354 F.3d 1320, 1331–33 (11th Cir.2003) (implicitly finding § 3553(f) applicable to § 1903 convictions, but denying safety valve relief on other grounds).[6]

Nevertheless, the government argues that the safety valve cannot apply to a § 1903 conviction because § 1903 is not expressly listed in § 3553(f). This argument is unavailing. Section 1903 on its face clearly demonstrates that the safety valve applies because convictions under this section must be punished *in accordance with* § 960. In addition, the government's position ignores the overwhelming legislative history and intent supporting identical treatment of § 1903 convictions and § 955 convictions, both of which are governed by § 960's penalties.

**B. LEGISLATIVE HISTORY AND CONGRESSIONAL INTENT**

As detailed above, convictions for drug possession on board a vessel on the high seas have historically been subject to a penalty equal to or less than the penalty applicable to drug possession on board a vessel within the United States territorial sea or contiguous customs zone. When enacted in 1941, the first provision prohibiting drug possession on board a vessel on the high seas was subject to a maximum sentence which was only half of the maximum sentence for drug possession on board a vessel in United States waters. Immediately before the passage of the Comprehensive Act of 1970, the high seas

---

exhaustive list of the offenses that § 960 governs. *See* 46 App. U.S.C. § 1903(g)(1) (specifically providing that § 1903 convictions must be punished "in accordance with" § 960).

**5.** In this inquiry, " 'unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning' at the time Congress enacted the statute." *BedRoc,* 541 U.S. at 184, 124 S.Ct. 1587 (quoting *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979)). The ordinary meaning of "in accordance with," at the time of the statute's enactment, was in "conformity" with or in "agreement" with. *The Random House Dictionary of the English Language* 12 (2d ed.1987).

**6.** In *Rendon,* the Eleventh Circuit operated under the assumption that the § 3553(f) safety valve applied to a § 1903 conviction. 354 F.3d at 1331–33. Instead of focusing on the *applicability* of the safety valve to § 1903 convictions, the court's analysis focused on whether the defendant *qualified* for the safety valve under § 3553's criteria given that the defendant had "identified himself as the captain." *Id.* at 1329. As the safety valve provision under § 3553(f)(4) is not available to "an organizer, leader, manager, or supervisor," the court concluded that the defendant was "not entitled to safety valve relief." *Id.* at 1333; 18 U.S.C. § 2553(f)(4); U.S.S.G § 5C1.2(a)(4).

provision and the United States waters provision were subject to the same penalty.

The Comprehensive Act repealed all existing laws regulating the importation and exportation of drugs. As part of the Comprehensive Act, Congress enacted 21 U.S.C. § 955 to replace existing law prohibiting drug possession on board a vessel in United States waters. The Comprehensive Act also provided that the newly enacted 21 U.S.C. § 960 would govern the punishment of § 955 convictions. Not surprisingly, as both § 955 and § 960 were enacted at the same time and within the same act, Congress explicitly included § 955 as one of the offenses punishable under § 960. *See* 21 U.S.C. § 960(a)

■ Subsequently, Congress realized that the Comprehensive Act had inadvertently repealed, without replacing, the 1941 Act's prohibition of drug possession on board United States vessels on the high seas.[7] In 1980, Congress responded to this oversight by enacting 21 U.S.C. § 955a, which prohibited drug possession on board certain vessels on the high seas.[8] Instead of amending § 960(a) to enumerate § 955a as an offense punishable under

§ 960, Congress expressly provided within § 955a itself that "any person that commits an offense as defined in this section shall be punished *in accordance with* the penalties set forth in section ... 960." *See* 21 U.S.C. § 955a(g)(1) (emphasis added). The Court finds that this explicit reference has the same affect as amending § 960(a), which enumerates specific offenses, to include § 955a.[9]

In 1986, Congress recodified § 955a as 46 App. U.S.C. § 1903 to effect changes based on jurisdictional dynamics. *See* Pub.L. No. 99–570, § 3202, 100 Stat. 3207; *Mazzaferro*, 907 F.2d at 253. Significantly, Congress did not change the applicable penalty provision. Indeed, § 1903(g)(1), identical to § 955a(g)(1), provided that "offenses under this section shall be punished *in accordance with* the penalties set forth in section ... 960." (emphasis added). Thus, Congress renewed its intention to have possession of controlled substances on the high seas punishable under the same provision, § 960, that governs the possession in United States waters.

■ The 1986 Anti–Drug Abuse Act, which recodified § 955a as § 1903, also

**7.** *See* Comprehensive Act, Title III, § 1101(a)(2), (9), 84 Stat. 1291, 1292 (repealing 1941 Act). *See also* S.Rep. No. 96–855 (1980), *reprinted in* 1980 U.S.C.C.A.N. 2785, 2785 ("Th[e Comprehensive Act] inadvertently contained a section repealing the criminal provision under which drug smugglers apprehended on the high seas were prosecuted without creating a new provision to replace it."); *id.* (the "difficulties in drug enforcement stem from this statutory void which does not proscribe possession of controlled substances on the high seas, while such conduct is a crime in U.S. territory."); H.R.Rep. No. 96–323, at 4–5 (1979) ("This oversight created a statutory void, resulting in an anomaly in the criminal law whereby possession of narcotics and dangerous drugs on U.S. territory and within the territorial sea is a Federal crime, while the same conduct on the high seas is not prohibited under existing law.").

**8.** *See* Act of 1980, Pub.L. No. 96–350, § 1, 94 Stat. 1159, 1160.

**9.** The government points out that only Title 21 offenses are listed in § 3553(f)'s safety valve provision. The government goes on to argue that because no Title 46 offenses are listed in § 3553(f), safety valve relief cannot apply to 46 App. U.S.C. § 1903. This argument is not well taken. As the statutory history reveals, § 1903 was initially codified as 21 U.S.C. § 955a in Title 21, not Title 46. Further, not all Title 21 offenses are afforded safety valve relief because they are individually listed in § 3553(f) or codified in Title 21. Rather, the safety valve applies because their respective penalty provision, such as § 960, is explicitly listed in § 3553(f). Section 1903 is likewise afforded safety valve relief because its penalty provision, § 960, is enumerated in § 3553(f).

stiffened the penalties under § 960 through the creation of mandatory minimums. *See* Pub.L. No. 99–570, § 1302, 100 Stat. 3207 (codified at 21 U.S.C. § 960). As § 960 governed the penalties for convictions under both § 955 and § 1903, drug possession on board a vessel carried a mandatory minimum sentence regardless of whether the vessel was found on the high seas or in United States waters. In 1994, however, Congress recognized that the mandatory minimums under § 960, among other provisions, were inherently problematic because they subjected both low-level offenders and more culpable offenders to the same penalty. H.R.Rep. No. 103–460 (1994). To resolve this problem, Congress specifically created a safety valve under 18 U.S.C. § 3553(f) which applied in part to an offense under § 960. Thus, because Congress enacted the safety valve provision to alleviate the sentencing problems in § 960, the safety valve should apply to *all* offenses punished under § 960, including § 1903.

To interpret § 1903's "in accordance with" language as incorporating only § 960's mandatory minimums and not 960's safety valve relief pursuant to § 3553(f), would unfairly create a one-way avenue whereby a defendant's penalty could only be increased but never reduced. Furthermore, there exists no statutory language or legislative history to support the idea that § 3553(f) was intended to create a historic change where, for the first time, certain § 955 (United States waters) offenders would be subject to a more lenient penalty than § 1903 (high seas) offenders with similar characteristics. Congress intended for § 955 and § 1903 convictions to be penalized the same under § 960 which is expressly listed in the safety valve provisions. This Court will not

draw a distinction where one does not exist.

Common sense suggests the same result. *Cf. Mt. Graham Red Squirrel v. Madigan,* 954 F.2d 1441, 1453 (9th Cir. 1992) ("Common sense not dogma is what is needed in order to explore the actual meaning of the legislative enactments."). Creating a distinction between convictions under § 1903 and § 955 causes an absurd result. *See Silvers,* 402 F.3d at 900 ("[Another] consideration in statutory interpretation is practicality, or put another way, the avoidance of an absurd result.") (citing *Royal Foods Co. v. RJR Holdings, Inc.,* 252 F.3d 1102 (9th Cir.2001)). It is illogical to reward offenders with safety valve relief simply because they eluded capture on the high seas and managed to navigate their vessel within the "12 mile limit".[10] Indeed, applying special significance to whether a defendant is found inside or outside of an imaginary line 12 nautical miles out to sea—save for jurisdictional issues—fails to serve the legislative purpose. Moreover, it cannot follow that the further the vessel is apprehended from the United States coastline, the greater the seriousness of the offense. As such, this Court finds that in addition to the clear dictates of the statutory language, the statute's history, Congressional intent and common sense suggest that the safety valve under 18 U.S.C. § 3553(f) applies to convictions under 46 App. U.S.C. § 1903, despite the fact that § 1903 is not specifically listed in § 3553(f) or § 960(a).

The government contends that under Ninth Circuit precedent, this court must narrowly construe § 3553(f) to preclude safety valve relief for § 1903 convictions. (Pl.'s Resp. & Objections at 2) (citing *United States v. Kakatin,* 214 F.3d 1049, 1051 (9th Cir.2000)). In *Kakatin,* the Ninth

**10.** *See Rubies,* 612 F.2d at 403 ("The territorial sea together with the contiguous customs

enforcement zone comprise what is commonly referred to as the '12–mile limit.' ").

Circuit held that § 3553 safety valve relief did not apply to a 21 U.S.C. § 860 conviction merely because its lesser included offense, 21 U.S.C. § 841, was expressly enumerated in § 3553(f). 214 F.3d at 1051 ("[W]e find unpersuasive Defendant's argument that, because § 841 is a lesser-included offense of a § 860 conviction, § 3553(f) must apply to § 860 convictions."). In analyzing the statutes, *Kakatin* expressly found that § 860 was a "greater or more serious offense" than the lesser included offense under § 841.[11] *Id.* Thus, the court reasoned that the safety valve should not apply to the greater, unenumerated offense by virtue of the lesser, enumerated offense. *Id.* ("It is a basic principle of criminal justice that those who commit more serious crimes deserve more serious punishment. Accordingly, Congress reasonably could have intended that the safety valve be available to those convicted of violating § 841, but not be available to those convicted of committing the more serious § 860 offense.").

In this regard, *Kakatin* is simply inapposite to the instant case. Section 1903 (high seas) cannot be said to be a "greater or more serious offense" than it's own penalty provision under § 960 or even the separate but related offense defined under § 955 (United States waters). Indeed, the legislative history here confirms that Congress clearly intended § 1903 to be sentenced the same as § 955. Both offenses are punished solely under § 960 which is expressly listed in the safety valve provisions. *See* 18 U.S.C. § 3553(f); U.S.S.G.

§ 5C1.2. Thus, both § 1903 and § 955 are afforded safety valve relief under § 3553(f). *Kakatin* is distinguishable and cannot serve to preclude the applicability of safety valve relief to § 1903 convictions.

 The Court is aware of the doctrine of *expressio unius est exclusio alterius,* but finds it inapplicable here. This doctrine " 'as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions.' " *Slivers v. Sony Pictures Entm't, Inc.,* 402 F.3d 881, 885 (9th Cir.2005) (quoting *Boudette v. Barnette,* 923 F.2d 754, 756–57 (9th Cir.1991)). "Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Andrus v. Glover Constr. Co.,* 446 U.S. 608, 616–17, 100 S.Ct. 1905, 64 L.Ed.2d 548 (1980). *See also TRW Inc. v. Andrews,* 534 U.S. 19, 28, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001). However, here, the Court is not implying additional exceptions to the mandatory minimum sentence. Rather, the Court finds, as it must, that the language "an offense under section ... 960" includes, as Congress expressly intended, convictions under § 1903. 18 U.S.C. § 3553(f).

## IV. CONCLUSION AND ORDER

Section 1903(g)(1) provides that a person convicted of violating § 1903 shall be pun-

---

**11.** In fact, § 860 provides for a penalty up to double the maximum sentence under § 841. *Compare* 21 U.S.C. § 860(a), *with id.* § 841(b). *See also United States v. Thornton,* 901 F.2d 738, 740 (9th Cir.1990) ("The legislative purpose of section [860] was to help reduce drug use by children by 'sending a signal to drug dealers that we will not tolerate their presence near our schools.' Certainly, the congressional goal of reducing the avail-

ability and hence the use of drugs by school children is rationally achieved by increasing the penalties for those who sell drugs near schools.") (quoting 130 Cong. Rec. S559 (daily ed. Jan., 1984) (statement of Sen. Hawkins)); *Kakatin,* 214 F.3d at 1051(same; "[a] person who has committed a § 860 offense has committed a § 841 offense *and* has done so in a particularly sensitive place") (emphasis in original).

**1234**

ished in accordance with the penalties set forth in 21 U.S.C. § 960. Section 960 is modified by 18 U.S.C. § 3553(f)'s safety valve relief. Thus, as the statutory language itself, and the Congressional history and intent make clear, to be punished "in accordance with section . . . 960" includes the possibility of the relief from the mandatory minimum sentence that is provided by § 3553(f). In light of the foregoing, the Court finds that safety valve relief, under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, is available to the Defendants convicted in this case of violating 46 App. U.S.C. § 1903. Whether the Defendants meet the five requirements to qualify for safety valve relief is an issue reserved for another day. *See* 18 U.S.C. § 3553(f)(1)-(5); U.S.S.G. § 5C1.2(a)(1)-(5).

**IT IS SO ORDERED.**