# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

RAMON SANCHEZ FERNANDEZ,
          *Defendant-Appellant.*

No. 06-50595

D.C. No.
CR-03-01249-DSF

OPINION

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted
February 5, 2008—Pasadena, California

Filed May 27, 2008

Before: Alfred T. Goodwin, Diarmuid F. O'Scannlain, and
William A. Fletcher, Circuit Judges.

Opinion by Judge O'Scannlain

## COUNSEL

G. David Haigh, Santa Ana, California, argued the cause for
the defendant-appellant and filed a brief.

Christopher Brunwin, Assistant United States Attorney, Los
Angeles, California, argued the cause for the plaintiff-

appellee and filed a brief; George S. Cardona, United States Attorney, and Thomas P. O'Brien, Assistant United States Attorney, Chief, Criminal Division, were on the brief.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether evidence obtained from an authorized wiretap investigation must be suppressed where the government continued to intercept a named target's conversations despite his adoption of a new alias.

I

A

At the heart of this case are six wiretap orders obtained by Drug Enforcement Agency investigators between May and October 2003 as part of an investigation of a drug trafficking conspiracy. At the outset of the investigation, the officers believed that the conspiracy was headed by an individual named Enrique Mendoza, and thus the first four wiretap applications submitted to the district court by the government named Mendoza, among others, as a target.

While intercepting a conversation on August 8, 2003, the investigators for the first time learned that "Enrique Mendoza" was merely an alias used by their target suspect; they concluded that he adopted a new alias "Jorge Acosta," based on their recognition of his voice. In their subsequent status reports and wiretap applications to the district court, the investigators gave detailed reports of intercepted calls involving "Acosta," but they did not inform the district court of their belief that "Mendoza" and "Acosta" were the same person. Rather, the government's subsequent wiretap applications

now named as targets both "Jorge Acosta" and "Enrique Mendoza," among others.

Soon thereafter, investigators intercepted conversations between "Acosta" and Ramon Sanchez Fernandez arranging for the transportation and sale of narcotics. They concluded that Fernandez was a multi-kilogram narcotics broker who negotiated and facilitated sales of narcotics for "Acosta." Accordingly, on December 12, 2003, investigators obtained a warrant to search Fernandez's residence. During the search, they seized a cache of firearms that included a .22 Marlin rifle, a .357 Magnum revolver, an Olympic Arms semi-automatic rifle, a ballistic vest, and a military protective flak vest.

B

On March 16, 2004, the government indicted Fernandez and eleven others for various offenses stemming from the drug trafficking conspiracy. Fernandez was charged with conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), and with aiding and abetting the distribution of cocaine, in violation of 18 U.S.C. § 2. The government also sought criminal forfeiture of the proceeds of illegal drug trafficking in his possession under 21 U.S.C. § 853.

Fernandez moved to suppress evidence seized as a result of the wiretap orders, arguing, in relevant part, that the government took insufficient steps to minimize unauthorized surveillance by continuing to intercept its target's conversations after he had adopted a new alias. The district court denied Fernandez's motion, finding that the investigators immediately and in good faith recognized that "Acosta" and "Mendoza" were the same person, and that the officers did not intend to deceive the district court by failing to report such conclusion. The district court therefore held that the wiretap orders directly authorized investigators to intercept "Acosta" 's telephone conversations.

Fernandez pled guilty to the charges, expressly reserving the right to appeal the district court's denial of his suppression motion as well as any sentencing claims. The district court sentenced Fernandez to 120 months in prison and five years supervised release. In determining the applicable sentence, the district court denied Fernandez's motion for safety valve relief from the mandatory minimum sentence, required by 18 U.S.C. § 3553(f), on the ground that the arms seized from his residence were used in connection with the underlying drug conspiracy.

Fernandez timely appealed both his conviction and his sentence.

## II

**[1]** Fernandez first argues that the officers inadequately minimized unauthorized interceptions by continuing to intercept "Acosta" 's conversations without express authorization.[1] Wiretapping or electronic surveillance must "be conducted in such a way as to minimize the interception of communications not otherwise subject to" authorized surveillance. 18 U.S.C. § 2518(5). "[Section 2518] 'does not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to 'minimize' the interception of such conversations.' " *United States v. Bennett*, 219 F.3d 1117, 1123 (9th Cir. 2000) (quoting *Scott v. United States*, 436 U.S. 128, 140 (1978)); *see also United States v. McGuire*, 307 F.3d 1192, 1199 (9th Cir. 2002) ("Minimization requires that the government adopt reasonable measures to reduce to a practical minimum the interception of conversations unrelated to the criminal activity under investigation while permitting the government to pur-

---

[1]In a concurrently filed memorandum disposition, we address Fernandez's other arguments concerning the district court's denial of his suppression motion. *See United States v. Fernandez*, No. 06-50595 (filed May 27, 2008).

sue legitimate investigation."). In considering whether adequate minimization steps were taken, we must focus on "the particular circumstances of the case." *McGuire*, 307 F.3d at 1199-1200.

[2] Here, the district court found that investigators immediately recognized that "Acosta" and "Mendoza" were the same person. Accordingly, they necessarily had reasonable grounds to conclude that conversations involving "Acosta" would be tied to the "criminal activity under investigation," *id*. at 1199, and hence would fall within the ambit of the wiretap order, which they previously obtained with regard to "Mendoza." Such conclusion is particularly warranted because the investigators targeted a drug conspiracy. The Supreme Court has held that "when the investigation is focusing on what is thought to be a widespread conspiracy more extensive surveillance may be justified in an attempt to determine the precise scope of the enterprise." *Scott*, 436 U.S. at 140. Thus, investigators may account for the fact that "unlawful conspiracies do not always lay bare their plans in explicit words" and that the players in the conspiracy may use "secret code" in communicating, *McGuire*, 307 F.3d at 1201, here by adopting false names.

Moreover, were we to hold that investigators must terminate a wiretap surveillance whenever a target adopts a new alias, such rule would frustrate government investigations well beyond the limited scope of the minimization requirement. Participants of a drug conspiracy easily could rotate between new aliases, which would have the perverse effect of forcing officers to halt their investigation and trudge through the time-consuming task of filing a new wiretap application. Yet where investigators have a good faith belief that a target merely has adopted a new alias, as here, requiring them to engage in such procedures would impede the interest in "permitting the government to pursue legitimate investigation[s]," and would undermine the "ad hoc nature of any determination of reasonableness." *Id*. at 1199. Indeed, such rule would have

the absurd result of permitting officers to wiretap previously unknown conspirators discovered in the course of its surveillance, *see United States v. Kahn*, 415 U.S. 143, 157 (1974), but prohibiting the *continued* interception of authorized targets who simply have adopted a new name.

Our analysis is not altered by the existence *vel non* of an individual actually named Enrique Mendoza, whom federal officers at one point mistakenly believed was the leader of the target drug conspiracy. Even after investigators discovered that their target was a distinct individual who had adopted the alias "Jorge Acosta," their prior interceptions of his conversations provided ample evidence that "Acosta" was involved in the target conspiracy. The wiretap order, which explicitly authorized the targeting of "others unknown," therefore permitted the continued interception of "Acosta" 's conversations. S*ee Kahn*, 415 U.S. at 157.**[2]**

**[3]** Accordingly, we must conclude that, where the government reasonably and in good faith concludes that the target of its wiretap surveillance has adopted a new alias, it may continue to intercept such target's conversations without violating the § 2518(5) minimization requirement. The district court therefore did not err in rejecting Fernandez's contention that the government violated such requirement by continuing to intercept "Acosta" 's conversations without express authorization.

## III

**[4]** Fernandez next argues that the district court clearly

---

**[2]**Fernandez's reliance on *United States v. Capra*, 501 F.2d 267 (2d Cir. 1974), is unavailing. There, the Second Circuit held that investigators violated the minimization requirement where they knowingly intercepted calls involving an individual not named in the district court's wiretap order. *Id*. at 277. This case is distinguishable, however, because the targeted individual remained the same throughout the surveillance.

erred in finding that the arms seized from his residence were used in connection with the underlying drug conspiracy, and that the district court therefore erroneously denied his motion for safety valve relief. Under 18 U.S.C. § 3553(f), a defendant is entitled to relief from a mandatory minimum sentence if five criteria are satisfied. Under the only criterion relevant in this appeal, safety valve relief is available where "the defendant did not . . . possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." § 3553(f)(2). "[T]he burden is on the defendant to prove that it was 'clearly improbable' that he possessed a firearm in connection with the offense." *United States v. Ferryman*, 444 F.3d 1183, 1186 (9th Cir. 2006). "[T]he circumstances in which the firearms were found, coupled with the implausibility of the defendants' explanations" may serve as grounds for concluding that firearms were possessed in connection with the offense of conviction. *Id.* "Offense" means "the offense of conviction and all relevant conduct." *United States v. Miller*, 151 F.3d 957, 960 (9th Cir. 1998) (noting that "[a]ny infraction is an offense, whether one is caught or not").

Fernandez argues that "any weapon possession was totally unrelated" to the underlying conspiracy, because the alleged drug transactions did not occur in his home, where the weapons were found, and because he did not "ha[ve] physical possession of them" during such transactions. Rather, he contends that he possessed the weapons "simply to protect [his] residence and family."

The district court disagreed with Fernandez's characterization of his offense, finding that Fernandez was involved in a broad-based drug conspiracy for which "there was no particular location." Thus, the district court concluded that, even if Fernandez did not possess the weapons at the precise time and place of his alleged drug transactions, Fernandez failed to establish that, by storing the weapons in his home, he did not possess them in the "conduct of the offense." Finally, the district court found implausible Fernandez's explanation that he

possessed the cache of arms merely to protect his family, but it found that, in any event, Fernandez's concern for his family's protection itself stemmed from the dangers created by his involvement in a drug conspiracy. The district court therefore held that Fernandez failed to carry his burden of establishing that the weapons seized from his residence were not possessed in connection with the underlying drug conspiracy.

[5] Here, the guns found in Fernandez's residence were far from the kind or quantity associated with family protection; they included, as noted, not just a revolver, but two rifles and two protective vests. While Fernandez may simply have sought to overwhelm any would-be burglar in steadfast devotion to his kindred's welfare, we are satisfied the district court did not clearly err in deeming such explanation implausible. *See Ferryman*, 444 F.3d at 1186-87 (rejecting the defendant's explanation that eleven firearms found in his residence, six of which were loaded, were for his family's protection); *see also United States v. Smith*, 175 F.3d 1147, 1148-49 (9th Cir. 1999) (rejecting the defendant's explanation that a gun found in his backpack was not connected to his marijuana garden but instead was used to shoot snakes, where the "nature of the gun was more in the form of a potential weapon than it was . . . a sporting type of gun") (internal quotation marks omitted).

[6] Moreover, regardless of Fernandez's contention that the weapons were not on his person during actual drug transactions, we also are satisfied that the district court did not clearly err in concluding that the storage of a large cache of weaponry for protection from the dangers attendant to participation in a drug conspiracy is "relevant conduct" within the purview of § 3553(f)(2). *Miller*, 151 F.3d at 960; *see United States v. Carrasco*, 257 F.3d 1045, 1048 (9th Cir. 2001) ("Firearms are known tools of the trade of narcotics dealing because of the danger inherent in that line of work.") (internal quotation marks omitted).

**[7]** Accordingly, we must conclude that the district court did not clearly err in denying Fernandez's motion for safety valve relief.

## IV

For the foregoing reasons, Fernandez's conviction and sentence are

AFFIRMED.