**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellant,*

              v.

CARLOS HERNANDO GAMBOA-
CARDENAS,
           *Defendant-Appellee.*

No. 05-50151

D.C. No.
CR-03-02000-2-IEG

UNITED STATES OF AMERICA,
 *Plaintiff-Appellant/Cross-Appellee,*

              v.

EDGAR CUERO-ARAGON,
           *Defendant-Appellee/Cross-*
                    *Appellant.*

Nos. 05-50152
     05-50188

D.C. No.
CR-03-02000-4-IEG

UNITED STATES OF AMERICA,
 *Plaintiff-Appellant/Cross-Appellee,*

              v.

JAIMEN BARAHONA-ESTUPINAN,
           *Defendant-Appellee/Cross-*
                    *Appellant.*

Nos. 05-50153
     05-50187

D.C. No.
CR-03-02000-1-IEG

14675

UNITED STATES OF AMERICA,
          *Plaintiff-Appellant,*

v.

JAIRO GAMBOA-VICTORIA,
          *Defendant-Appellee.*

No. 05-50154

D.C. No.
CR-03-02000-3-IEG

OPINION

Appeal from the United States District Court
for the Southern District of California
Irma E. Gonzalez, Chief District Judge, Presiding

Argued and Submitted
January 11, 2007—Pasadena, California

Filed November 8, 2007

Before: Andrew J. Kleinfeld, Raymond C. Fisher, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.;
Partial Concurrence and Partial Dissent by Judge Fisher

**COUNSEL**

Patrick H. Hearn (argued), Special Assistant United States Attorney, and David P. Curnow, Assistant United States Attorney, San Diego, California, for the plaintiff-appellant.

Andrew K. Nietor (argued), San Diego, California, for defendant-appellee Gamboa-Cardenas. Stephen P. White, San Diego, California, for defendant-appellee Cuero-Aragon. James Winston Gleave, San Diego, California, for defendant-appellee Barahona-Estupinan. Casey Donovan (argued), San Diego, California, for defendant-appellee Gamboa-Victoria.

**OPINION**

MILAN D. SMITH, JR., Circuit Judge:

In this appeal we consider whether the safety valve provision of 18 U.S.C. § 3553(f) applies to defendants convicted of possession with intent to distribute cocaine on board a vessel, in violation of the Maritime Drug Law Enforcement Act, § 3, 46 App. U.S.C. § 1903 (repealed 2006).[1] We hold that the

---

[1]Title 46 App. U.S.C. § 1903 has been reenacted without relevant changes in 46 U.S.C. §§ 70501-07.

safety valve is unavailable to defendants convicted under 46 App. U.S.C. § 1903.[2] Therefore, we vacate the sentences of Carlos Hernando Gamboa-Cardenas, Jaimen Barahona-Estupinan and Edgar Cuero-Aragon, and we remand for resentencing without the safety valve. Because we find that the government is estopped from arguing that the safety valve is inapplicable in the case of Jairo Gamboa-Victoria, we affirm his sentence, including the reduction for acceptance of responsibility.

## I.  Background and Prior Proceedings

Acting on a tip from a United States Coast Guard ("USCG") aircraft patrolling the international waters of the Pacific Ocean approximately 480 nautical miles south of San Jose, Guatemala, a USCG cutter intercepted a "go-fast" boat,[3] which was stalled in the water. The USCG officials questioned the four occupants of the "go-fast" boat in Spanish concerning their nationality, their last port of call, their next port of call, and whether they had any documentation for the vessel. One of the four identified himself as the master of the "go-fast" vessel and stated that the occupants were Colombian, that the vessel came from the Buenaventura port in Colombia and that Costa Rica was their next port of call. Although the occupants produced personal identification, they could not produce any documentation for the vessel. The USCG contacted Colombian authorities, who were unable to confirm that the "go-fast" boat was of Colombian registry. As a result, the USCG officials boarded the vessel.

---

[2]Under 46 App. U.S.C. § 1903(a), "[i]t is unlawful for any person on board a vessel of the United States, or on board a vessel subject to the jurisdiction of the United States, to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance." This language has been reenacted in its entirety in 46 U.S.C. § 70503.

[3]A "go-fast" boat is about forty feet long, typically made of fiberglass, with multiple outboard engines, and is often used to transport cocaine.

While on board, the USCG officials observed in plain view sixty-six bales wrapped in plastic on the floor of the boat. The USCG officials opened one bale on the deck and it field-tested positive for cocaine. In total, the USCG officials seized approximately 1,303 kilograms of cocaine from the "go-fast" vessel. The USCG detained all four occupants of the boat and transported them to San Diego, California, where FBI agents conducted interviews with them following their arrests. The four occupants of the "go-fast" vessel were identified as Jaimen Barahona-Estupinan, Carlos Hernando Gamboa-Cardenas, Jairo Gamboa-Victoria and Edgar Cuero-Aragon (collectively "appellees").

A two-count criminal indictment charged the four appellees with (1) conspiracy to possess cocaine with intent to distribute on board a vessel in violation of 46 App. U.S.C. §§ 1903(a), (c) and (j); and (2) possession of cocaine with intent to distribute on board a vessel in violation of 46 App. U.S.C. §§ 1903(a), (c)(1)(A) and (f). Appellees entered pleas of not guilty to both counts of the indictment. At the conclusion of appellees' first trial, the jury informed the district court that it was unable to reach a verdict. The district court subsequently granted appellees' motion for a mistrial based on a hung jury. Appellees were then re-tried before a new jury on the same charges. At the conclusion of the second trial, the jury returned a guilty verdict on both counts against all four appellees.

Contrary to the recommendation of the Presentence Report, and over the government's objection, the district court determined that safety valve relief under 18 U.S.C. § 3553(f) was available to the appellees concerning their criminal convictions under 46 App. U.S.C. § 1903. Accordingly, the government conducted the necessary post-conviction interviews with appellees pursuant to 18 U.S.C. § 3553(f)(5), which states that the application of the safety valve is contingent on a defendant truthfully providing the government with all information and evidence that the defendant has concerning the offense.

Because it determined that the appellees were truthful in their safety valve interviews with the government, the district court concluded that they qualified for the available safety valve relief and the relevant statutory minimum sentence was thus inapplicable. At sentencing, the district court found that appellees played a minor role in the offense and it also determined that appellees had accepted responsibility for their crimes. Appellees had no criminal history. After applying the 18 U.S.C. § 3553(a) factors, the district court calculated an adjusted offense level corresponding to an advisory guidelines sentencing range of forty-one to fifty-one months for all four appellees. The district court imposed a forty-one-month sentence on each appellee. We have jurisdiction under 28 U.S.C. § 1291 to consider the government's appeal of the sentences imposed on appellees.

## II.   Standard of Review and Jurisdiction

We review de novo the district court's interpretation of a statute as well as its interpretation of the sentencing guidelines. *United States v. Kimbrew*, 406 F.3d 1149, 1151 (9th Cir. 2005); *United States v. Ventre*, 338 F.3d 1047, 1052 (9th Cir. 2003). We review for clear error the district court's factual determination that a defendant qualifies for a reduced sentence based on acceptance of responsibility. *United States v. Espinoza-Cano*, 456 F.3d 1126, 1130 (9th Cir. 2006).

## III.   Discussion

The government raises three challenges to the appellees' sentences. First, the government contends that the safety valve provision in 18 U.S.C. § 3553(f) does not apply to offenses committed under 46 App. U.S.C. § 1903. Second, even assuming, arguendo, that the safety valve applies to 46 App. U.S.C. § 1903 offenses, the government argues that appellees Gamboa-Cardenas, Cuero-Aragon and Barahona-Estupinan do not qualify for its protection because they failed to satisfy the fifth element of the safety valve provision, which requires

appellees to provide truthful information and evidence regarding their crimes to the government. *See* 18 U.S.C. § 3553(f)(5). Third, the government contends that the district court erred by granting appellees a two-level downward adjustment for acceptance of responsibility.

We agree with the government that the safety valve provision of 18 U.S.C. § 3553(f) is inapplicable as a matter of law to sentences imposed following violations of 46 App. U.S.C. § 1903. Accordingly, with respect to appellees Gamboa-Cardenas, Cuero-Aragon and Barahona-Estupinan, we only reach the government's first argument and we vacate their sentences and remand for resentencing without the safety valve. We also find, however, that the government is estopped from raising this argument as to appellee Gamboa-Victoria and thus the safety valve is available to him. The government concedes that if the safety valve is available, Gamboa-Victoria has satisfied the necessary statutory elements to receive safety valve relief. Thus, our only additional inquiry with respect to Gamboa-Victoria is whether the district court erred by applying a two-level downward adjustment for acceptance of responsibility. Because we find that the district court did not err in this respect, we affirm Gamboa-Victoria's forty-one-month sentence.

## A.    The safety valve provision in 18 U.S.C. § 3553(f) does not apply to offenses under 46 App. U.S.C. § 1903.

We find that the plain statutory language indicates that the safety valve provision in 18 U.S.C. § 3553(f) does not apply to violations of 46 App. U.S.C. § 1903. First, 46 App. U.S.C. § 1903 is not listed in the safety valve statute or 21 U.S.C. § 960. Second, a plain reading of 46 App. U.S.C. § 1903(g)(1) demonstrates that the safety valve is inapplicable as a matter of law. Furthermore, we find that the evidence relating to the statutory history of 46 App. U.S.C. § 1903 confirms our plain language reading of the statute.

### 1.  *Plain Statutory Language*

Historically, defendants convicted of serious drug crimes could only receive a sentence below the applicable statutory minimum if the government filed a motion for downward departure based on the defendant's substantial assistance to the authorities under § 5K1.1 of the United States Sentencing Guidelines ("U.S.S.G."). However, an inequity in the sentencing scheme began to develop as more culpable defendants were able to provide the government with new and useful information that the lower-level offenders could not. As a result, the more culpable defendants could avoid the statutory minimum penalties more easily than the lower-level offenders, who typically had less knowledge and thus had more difficulty providing sufficient assistance to the authorities to earn a § 5K1.1 motion from the government on their behalf. *See United States v. Shrestha*, 86 F.3d 935, 938 (9th Cir. 1996). In order to provide relief to lower-level offenders who made a good faith effort to cooperate with authorities but whose knowledge was of little use to the government, Congress passed the Mandatory Minimum Sentencing Reform Act, 18 U.S.C. § 3553(f). The Mandatory Minimum Sentencing Reform Act, also known as the safety valve provision, provides relief from otherwise applicable statutory minimum sentences when a defendant satisfies five requirements. The safety valve provision states:

> **(f)  Limitation on applicability of statutory minimums in certain cases.** Notwithstanding any other provision of law, *in the case of an offense under section 401, 404, or 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846) or section 1010 or 1013 of the Controlled Substances Import and Export Act (21 U.S.C. 960, 963)*, the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at

sentencing, after the Government has been afforded the opportunity to make a recommendation, that—

**(1)** the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

**(2)** the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

**(3)** the offense did not result in death or serious bodily injury to any person;

**(4)** the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

**(5)** not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f) (emphasis added).[4]

**[1]** Title 18 U.S.C. § 3553(f) states that the safety valve applies to "an offense under" a limited number of statutes that are specifically listed in the text, namely: 21 U.S.C. §§ 841, 844, 846, 960 and 963. Title 21 U.S.C. § 960 does not describe an *offense* itself, but rather prescribes the *penalty* for a number of drug offenses prohibited by other statutes. Specifically, 21 U.S.C. § 960 provides the penalties for violations of 21 U.S.C. §§ 952, 953, 955, 957 and 959, all of which are listed in 21 U.S.C. § 960(a). Accordingly, 18 U.S.C. § 3553(f)'s reference to "an offense under . . . 21 U.S.C. § 960" invokes the statutes listed in 21 U.S.C. § 960(a), and thus the safety valve also applies to offenses committed in violation of 21 U.S.C. §§ 952, 953, 955, 957 and 959.

**[2]** Title 46 App. U.S.C. § 1903, however, is not included in the offenses listed in 18 U.S.C. § 3553(f) or 21 U.S.C. § 960(a). The meaning of this exclusion must be interpreted in light of the entire statutory scheme and legislative purpose. "The doctrine of *expressio unius est exclusio alterius* as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions." *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (quotation marks omitted). The maxim "is a rule of interpretation, not a rule of law," and "is properly applied only when it makes sense as a matter of legislative purpose." *Longview Fibre Co. v. Rasmussen*, 980 F.2d 1307, 1313 (9th Cir. 1992). "[T]he *expressio unius* principle describes what we usually mean by a particular manner of expression, but does not prescribe how we must interpret a phrase once written." *Id.*

---

[4]The safety valve provision is also recited verbatim in U.S.S.G. § 5C1.2.

**[3]** Here, the omission of 46 App. U.S.C. § 1903 from the statutes listed in 18 U.S.C. § 3553(f) and 21 U.S.C. § 960(a) indicates that § 1903 offenses are excluded from safety valve relief. This conclusion is buttressed by the fact that Congress codified the current form of 46 App. U.S.C. § 1903 in 1986, eight years before deciding which statutes to include on the 18 U.S.C. § 3553(f) list of offenses to which safety valve relief would apply. Congress could have included § 1903 as easily as it included the other statutes specifically listed in § 3553(f). The timing of Congress's actions indicates that it consciously chose *not* to include § 1903 offenses on the safety valve list.

In a similar context, we have previously held that the safety valve provision in 18 U.S.C. § 3553(f) is only applicable to the statutes specifically enumerated therein. *United States v. Kakatin*, 214 F.3d 1049, 1050-51 (9th Cir. 2000). The issue presented in *Kakatin* was whether the safety valve applied to convictions under 21 U.S.C. § 860, a statute which is not specifically listed in 18 U.S.C. § 3553(f). *Id.* We stated:

> We first note, and Defendant concedes, that by its plain terms § 3553(f) does not apply to § 860 convictions. Nor does the wording of § 3553(f) support the argument that it contains anything other than an *exhaustive list* of the offenses to which the safety valve applies. Under the plain terms of § 3553(f), the safety valve applies *only* to convictions under 21 U.S.C. §§ 841, 844, 846, 960, and 963. Under the general rule of statutory construction that the inclusion of certain provisions in a statute implies the exclusion of others § 3553(f) does not apply to convictions under § 860.

*Kakatin*, 214 F.3d at 1051 (citation omitted) (emphasis added). Other circuits have also held that the safety valve is inapplicable to offenses under 21 U.S.C. § 860 because that statute is not explicitly listed in 18 U.S.C. § 3553(f). *See United States v. Phillips*, 382 F.3d 489, 499 (5th Cir. 2004)

(holding that the "application of § 3553(f)'s safety valve is explicitly limited to the following offenses: 21 U.S.C. §§ 841, 844, 846, 960, and 963"); *United States v. Koons*, 300 F.3d 985, 993 (8th Cir. 2002) (holding that the safety valve does not apply to 21 U.S.C. § 860 because "Congress specified particular offenses for which a § 3553(f) reduction may be considered, and § 860 is not listed as one of them"); *United States v. Anderson*, 200 F.3d 1344, 1348 (11th Cir. 2000) ("The selection of these five statutes reflects an intent to exclude others . . . ."); *United States v. McQuilkin*, 78 F.3d 105, 108 (3d Cir. 1996) ("In clear and unambiguous language, therefore, 18 U.S.C. § 3553(f) does not apply to convictions under 21 U.S.C. § 860 . . . ."). Like 21 U.S.C. § 860, 46 App. U.S.C. § 1903 is not specifically listed in 18 U.S.C. § 3553(f) and we thus hold that the plain statutory text indicates that the safety valve does not apply to violations of 46 App. U.S.C. § 1903.

To support their position that the plain statutory language does not lead to this conclusion, appellees rely on the reasoning expressed in a recent district court decision, *United States v. Olave-Valencia*, 371 F. Supp. 2d 1224 (S.D. Cal. 2005), which held that the safety valve provision in 18 U.S.C. § 3553(f) does apply to convictions under 46 App. U.S.C. § 1903. Appellees note that 18 U.S.C. § 3553(f) expressly states that the safety valve applies to "an offense under . . . 21 U.S.C. 960." 18 U.S.C. § 3553(f); *see Olave-Valencia*, 371 F. Supp. 2d at 1229. Appellees also argue that 46 App. U.S.C. § 1903, though not specifically listed in 21 U.S.C. § 960, nevertheless constitutes "an offense under . . . 21 U.S.C. 960" for safety valve purposes because 46 App. U.S.C. § 1903 states that a defendant who violates the provisions of § 1903 "shall be punished in accordance with the penalties set forth in [21 U.S.C. § 960]." 46 App. U.S.C. § 1903 (g)(1).[5] The district

_____

[5]As reenacted, the relevant statutory language now states that those convicted under the statute "shall be punished *as provided in* [21 U.S.C.

court in *Olave-Valencia* adopted this argument and found that the text of § 1903(g)(1) indicates that sentences under § 1903, just like the punishments under the enumerated statutes in § 960, are not only subject to the applicable mandatory minimums of § 960, but are also entitled to safety valve relief through 18 U.S.C. § 3553(f)'s invocation of § 960. *Olave-Valencia*, 371 F. Supp. 2d at 1230.

[4] This is a misreading of the plain statutory language. The *Olave-Valencia* court read 46 App. U.S.C. § 1903(g)(1) as requiring violations of § 1903 to be treated exactly the same as violations of the statutes listed in 21 U.S.C. § 960(a). *Id.* We do not agree that the text of § 1903(g)(1) supports this conclusion. As noted above, 46 App. U.S.C. § 1903(g)(1) states that defendants violating § 1903 "shall be punished in accordance with the *penalties set forth in* [21 U.S.C. § 960]" (emphasis added). The statutory language does not indicate that violations of § 1903 shall be punished the same as violations of the statutes listed in 21 U.S.C. § 960(a). Instead, § 1903(g)(1) unambiguously invokes the *penalties set forth in* 21 U.S.C. § 960, not the entire text of § 960. Accordingly, the relevant inquiry is "What are the penalties set forth in 21 U.S.C. § 960?" The penalties set forth in 21 U.S.C. § 960 are found in § 960(b) and include explicit references to statutory minimum sentences. *See* 21 U.S.C. §§ 960(b)(1), (b)(2). There is no mention of the safety valve anywhere in § 960. Accordingly, a punishment in accordance with "the penalties set forth in [21 U.S.C. § 960]" would incorporate the statutory minimum,[6] but not the safety valve of 18 U.S.C. § 3553(f)

---

960]," 46 U.S.C. § 70506 (emphasis added), rather than "*in accordance with the penalties set forth in* [21 U.S.C. § 960]," 46 App. U.S.C. § 1903 (g)(1). Although we examine the statutory language as originally set forth in 46 App. U.S.C. § 1903(g)(1), our analysis would be unchanged under the reenacted statute.

[6]There is no dispute that without the safety valve, the applicable statutory minimum sentence for all four appellees is ten years, as the district court recognized at the sentencing hearing. *See* 21 U.S.C. § 960(b)(1).

because the mandatory minimum is "set forth in [21 U.S.C. § 960]" and the safety valve is not. 46 App. U.S.C. § 1903(g)(1). We thus find that the plain statutory language indicates that 46 App. U.S.C. § 1903 is not "an offense under . . . 21 U.S.C. 960," despite § 1903(g)(1)'s invocation of the penalties of 21 U.S.C. § 960. Accordingly, we hold that the safety valve is unavailable to § 1903 offenses.

## 2. *History of 46 App. U.S.C. § 1903*

Having determined that the plain statutory language unambiguously indicates that the safety valve is inapplicable to offenses under 46 App. U.S.C. § 1903, we would generally end our inquiry here. *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) ("Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous."). However, we recognize that in the past the government has acted under the assumption that the safety valve does apply to § 1903 offenses, and thus has not generally challenged its availability. *See, e.g.*, *United States v. Zakharov*, 468 F.3d 1171, 1181 (9th Cir. 2006) (the government argued that the defendant did not satisfy the elements of § 3553(f), but it never argued that the safety valve was legally unavailable); *United States v. Bravo*, 489 F.3d 1, 11-12 (1st Cir. 2007) (same). We also recognize that the published district court order in *Olave-Valencia* disagrees with our reading of the plain statutory language and relies heavily on an analysis of the statutory history of 46 App. U.S.C. § 1903 to determine that the safety valve is indeed applicable to § 1903 offenses. Accordingly, we believe it appropriate to examine the history of the statute as well.

**[5]** Despite *Olave-Valencia*'s conclusion to the contrary, we find that the history and purpose of 46 App. U.S.C. § 1903 demonstrate that the safety valve does not apply to offenses committed under this statute. Appellees note that in *Olave-Valencia* the district court found that denying safety valve relief to 46 App. U.S.C. § 1903 offenses would lead to the

illogical result of treating violations of 46 App. U.S.C. § 1903 more severely than violations of 21 U.S.C. § 955. *See Olave-Valencia*, 371 F. Supp. 2d at 1232. In its entirety, 21 U.S.C. § 955 states:

> It shall be unlawful for any person to bring or possess on board any vessel or aircraft, or on board any vehicle of a carrier, arriving in or departing from the United States or the customs territory of the United States, a controlled substance in schedule I or II or a narcotic drug in schedule III or IV, unless such substance or drug is a part of the cargo entered in the manifest or part of the official supplies of the vessel, aircraft, or vehicle.

Section 955 is specifically listed in 21 U.S.C. § 960(a)(2), and thus violations of § 955 trigger § 960's mandatory minimums, but they are also protected by the safety valve as "an offense under . . . 21 U.S.C. 960." 18 U.S.C. § 3553(f). Adhering to our plain language reading of § 1903 and § 3553(f) creates a system in which violations of 21 U.S.C. § 955 receive safety valve protection, while violations of 46 App. U.S.C. § 1903 do not. Appellees see this as an illogical result at odds with relevant statutory history and congressional intent. *See Olave-Valencia*, 371 F. Supp. 2d at 1232.

To support their argument, appellees rely on the statutory history detailed in the published *Olave-Valencia* district court decision. In 1922, Congress passed a statute making it "unlawful to import or bring any narcotic drug into the United States or any territory under its control," including the territorial waters of the United States. Act of May 26, 1922 ("1922 Act"), ch. 202, § 1, 42 Stat. 596 (repealed 1970). Violations of the 1922 Act brought a ten-year maximum term of imprisonment. *Id.* In 1941, Congress passed a statute governing drug offenses on board United States vessels in international waters. It stated that "whoever brings [narcotics] on board, or has [narcotics] in his possession or control on board, any ves-

sel of the United States, while engaged on a foreign voyage" is subject to a five-year maximum sentence. Act of July 11, 1941 ("1941 Act"), ch. 289, § 1, 55 Stat. 584 (initially codified at 21 U.S.C. § 184a) (repealed 1970). By 1956, drug possession on board vessels within the territorial waters of the United States was subject to the same penalties as possession on board a vessel in the high seas. *See Olave-Valencia*, 371 F. Supp. 2d at 1227 (citing the Narcotic Control Act of 1956, ch. 629, §§ 105, 108, 70 Stat. 570 (repealed 1970)).

In 1970, Congress repealed and replaced all existing laws pertaining to the importation and exportation of narcotics, including the 1922 Act and the 1941 Act. Comprehensive Drug Abuse Prevention and Control Act ("Comprehensive Act"), Pub. L. No. 91-513, 84 Stat. 1292 (1970). As part of the Comprehensive Act, Congress enacted 21 U.S.C. § 955 as well as the accompanying penalty provision in 21 U.S.C. § 960. *See Olave-Valencia*, 371 F. Supp. 2d at 1227 (citations omitted). Title 21 U.S.C. § 955 covers the same offenses originally governed by the 1922 Act, but the Comprehensive Act failed to enact a new statute to govern drug possession on the high seas, offenses which were originally governed by the 1941 Act. *Id.* Adopting the reasoning of *Olave-Valencia*, the appellees contend that Congress filled this statutory void in 1980 by passing 21 U.S.C. § 955a, which was amended and codified as 46 App. U.S.C. § 1903 in 1986. *Id.* at 1228 (citing Act of Sept. 15, 1980, Pub. L. No. 96-350, § 1, 94 Stat. 1159, 1160; Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, § 3202, 100 Stat. 3207). Title 46 App. U.S.C. § 1903 states in relevant part:

> It is unlawful for any person on board a vessel of the United States, or on board a vessel subject to the jurisdiction of the United States, or who is a citizen of the United States or a resident alien of the United States on board any vessel, to knowingly or intentionally manufacture or distribute, or to possess with

intent to manufacture or distribute, a controlled sub-
stance.

46 App. U.S.C. § 1903(a). Appellees argue that the difference
between 21 U.S.C. § 955 and 46 App. U.S.C. § 1903 is the
same as the original difference between the 1922 Act and the
1941 Act—§ 955 governs possession in United States waters
and § 1903 governs possession on the high seas. Appellees
thus find it illogical to apply the safety valve to violations of
21 U.S.C. § 955 and not to violations of 46 App. U.S.C.
§ 1903 because such a rule would, for the first time, punish
drug possession in domestic waters more severely than pos-
session in international waters, thereby rewarding those who
elude capture until they almost reach United States soil. *See
Olave-Valencia*, 371 F. Supp. 2d at 1232.

We do not agree that 46 App. U.S.C. § 1903 merely consti-
tutes the modern formulation of the 1941 Act. Unlike the
1941 Act, 46 App. U.S.C. § 1903 retains jurisdiction over cer-
tain *non-United States* vessels in international waters. *See* 46
App. U.S.C. § 1903(c). Furthermore, 46 App. U.S.C. § 1903
not only applies to offenses committed on the high seas, but
it also covers offenses committed on board United States ves-
sels "within the customs waters of the United States,"
offenses which the 1922 Act (not the 1941 Act) would have
historically covered. 46 App. U.S.C. § 1903(c)(1)(D). Finally,
the 1941 Act governed a different substantive offense than 46
App. U.S.C. § 1903. The 1941 Act governed "possession or
control on board" a United States vessel, while 46 App.
U.S.C. § 1903 governs "possession with intent to manufacture
or distribute." 46 App. U.S.C. § 1903(a). Therefore, given the
differences between the 1941 Act and § 1903, we conclude
that the relationship between 46 App. U.S.C. § 1903 and 21
U.S.C. § 955 is not analogous to the relationship between the
1941 Act and the 1922 Act.

[6] Furthermore, appellees (and the *Olave-Valencia* court)
operate under the erroneous assumption that the principal dif-

ference between 21 U.S.C. § 955 and 46 App. U.S.C. § 1903 is geography. The district court in *Olave-Valencia* incorrectly found that 21 U.S.C. § 955 only differs from 46 App. U.S.C. § 1903 in that § 955 governs the waters of the United States and § 1903 governs the high seas. *See Olave-Valencia*, 371 F. Supp. 2d at 1232. The statutory texts unambiguously demonstrate that the true difference between 21 U.S.C. § 955 and 46 App. U.S.C. § 1903 lies in the prohibited conduct described therein. Title 21 U.S.C. § 955 and 46 App. U.S.C. § 1903 govern different substantive offenses. Under 21 U.S.C. § 955, it is unlawful for someone "to bring or possess on board any vessel . . . arriving in or departing from the . . . customs territory of the United States, a controlled substance . . . ." Under 46 App. U.S.C. § 1903(a), "[i]t is unlawful for any person on board a vessel . . . subject to the jurisdiction of the United States . . . to possess with intent to manufacture or distribute, a controlled substance." Section 955 thus governs mere possession of drugs within the customs waters, while § 1903 governs possession *with intent to manufacture or distribute* aboard any vessel subject to United States jurisdiction, including vessels within the customs waters of the United States. Unlike with § 955, mere possession of drugs on board a vessel does not implicate 46 App. U.S.C. § 1903, regardless of where the vessel is located. Instead, a defendant only violates 46 App. U.S.C. § 1903 by possessing drugs on board a vessel *with intent to manufacture or distribute*. It is perfectly logical to apply the safety valve to the lesser offense of possession on board a vessel, but not to the greater offense of possession on board a vessel with intent to manufacture or distribute. *See Kakatin*, 214 F.3d at 1051 ("It is a basic principle of criminal justice that those who commit more serious crimes deserve more serious punishment."). Therefore, we conclude that the statutory history supports our holding based on the statutory language that the safety valve provision of 18 U.S.C. § 3553(f) is inapplicable to violations of 46 App. U.S.C. § 1903.

**B. The government is estopped from arguing the inapplicability of the safety valve as to appellee Gamboa-Victoria, but not as to the other appellees.**

Regardless of the legal merits, appellees Gamboa-Victoria and Barahona-Estupinan contend that the government is estopped from arguing the legal unavailability of the safety valve in this case.[7] To establish grounds for estoppel against the government, appellees must first demonstrate that the four traditional elements of equitable estoppel are met. Those elements are "(1) the party to be estopped knows the facts, (2) he or she intends that his or her conduct will be acted on or must so act that the party invoking estoppel has a right to believe it is so intended, (3) the party invoking estoppel must be ignorant of the true facts, and (4) he or she must detrimentally rely on the former's conduct." *United States v. Hemmen*, 51 F.3d 883, 892 (9th Cir. 1995). In addition, a party seeking to estop the government must establish two additional factors: (1) "the government has engaged in affirmative misconduct going beyond mere negligence" and (2) "the government's act will cause a serious injustice and the imposition of estoppel will not unduly harm the public interest." *Pauly v. U.S. Dep't of Agric.*, 348 F.3d 1143, 1149 (9th Cir. 2003) (quotation marks omitted).

### 1. *Appellees Gamboa-Cardenas and Cuero-Aragon*

Appellees Gamboa-Cardenas and Cuero-Aragon did not raise the estoppel argument in their briefs and thus they have waived it. *See United States v. Nunez*, 223 F.3d 956, 958-59 (9th Cir. 2000). Therefore, the government was entitled to

---

[7]While appellees Gamboa-Victoria and Barahona-Estupinan use the term "waiver," their arguments indicate that they are asking us to apply the principle of estoppel against the government. Appellees never argue that the government has waived this argument by not preserving it; instead, they argue that the government induced appellees to detrimentally rely on the false promise that the safety valve was legally available, thus forfeiting the right to now argue the contrary position.

argue the unavailability of the safety valve as to these two appellees.

## 2.  *Appellee Barahona-Estupinan*

Appellee Barahona-Estupinan urges estoppel against the government because he waived his right to remain silent by giving a pre-trial safety valve interview, which waiver the government wrongly induced by telling him that the safety valve was available in this case.[8] The government claims that appellee Barahona-Estupinan has waived this argument by raising it for the first time on appeal. We do not reach the government's waiver argument because even assuming that Barahona-Estupinan's estoppel argument is properly before us, we find that it fails on the merits because his safety valve interview did not constitute detrimental reliance on the government's promise and thus he cannot establish the necessary elements for equitable estoppel. *See Hemmen*, 51 F.3d at 892.

**[7]** In his pre-trial safety valve interview, appellee Barahona-Estupinan repeated the same information he previously gave to the government during his extensive post-arrest interview, which pre-dated any governmental assurance that the safety valve would apply in this case. During his post-arrest interview, Barahona-Estupinan stated that unknown men blindfolded him, threatened him, and forced him into a

---

[8]Appellees Barahona-Estupinan and Gamboa-Victoria both also claim that the government acted in bad faith when it changed its position on the availability of the safety valve after conducting safety valve interviews. There is insufficient evidence to support a finding of bad faith. Appellees only point to the fact that the government argued at sentencing that the safety valve was unavailable, after previously telling appellees that they could be entitled to safety valve relief. On the other hand, the Presentence Report independently stated that the safety valve was unavailable to these offenses. In addition, the government presented well-reasoned legal arguments in writing and at a hearing before the district court to support its changed interpretation of the law. Accordingly, we find that the government did not act in bad faith.

taxi that took him to a small town approximately five hours away. The following day, he was transported to the location of the "go-fast" vessel where he met the other appellees. The unknown men told Barahona-Estupinan that he would be the captain of the boat. Barahona-Estupinan said that he was given a radio with programmed frequencies and told to take the boat along with the other appellees to Costa Rica. He said that he did not know what they were transporting, but figured it was cocaine. At the safety valve interview, Barahona-Estupinan merely reiterated that he did not know the men who blindfolded him and he stated that he did not know that cocaine was on board the vessel. He gave no additional information to the authorities during the pre-trial safety valve interview. Appellee Barahona-Estupinan waived his right to remain silent at the post-arrest interview without any governmental inducement and thus he suffered no detriment by giving a subsequent safety valve interview in which he merely repeated the substance of his post-arrest statement. Had Barahona-Estupinan refused to talk during his safety valve interview, the government would still have possessed the same information it presented at trial, and thus Barahona-Estupinan's reliance on the government's promise regarding the safety valve had no impact on the trial outcome. Therefore, we find that as a matter of law appellee Barahona-Estupinan did not detrimentally rely on the government's assurance that the safety was available to him. Accordingly, the government is not estopped from arguing that the safety valve is unavailable to appellee Barahona-Estupinan. *Id.*

### 3. *Appellee Gamboa-Victoria*

**[8]** Appellee Gamboa-Victoria presents an additional argument to support his claim for estoppel against the government. He argues for estoppel based on his waiver of the right to testify at trial. Gamboa-Victoria argues that he would have testified at trial if the government had not assured him that the safety valve was legally available to him. Unlike with appellee Barahona-Estupinan, appellee Gamboa-Victoria's reliance

went beyond merely restating in his pre-trial safety valve interview what he had already previously voluntarily told authorities. Gamboa-Victoria fully cooperated with the authorities before trial, but he also specifically chose not to testify at trial because he did not want to jeopardize the government's previous assurance that his initial pre-trial statement would qualify him for safety valve relief. We thus conclude that appellee Gamboa-Victoria has established the necessary elements of equitable estoppel, including detrimental reliance on the government's assurance that the safety valve would apply to him. *See Hemmen*, 51 F.3d at 892. In light of the government's past acquiescence to the application of the safety valve in § 1903 cases as well as Gamboa-Victoria's decision not to testify at trial based on the government's assurance that the safety valve would apply to him, we find that the government's abrupt change of position regarding safety valve relief in this case goes beyond "mere negligence" and would cause a "serious injustice" in the case of Gamboa-Victoria. *See Pauly*, 348 F.3d at 1149. Imposing estoppel against the government has no impact on Gamboa-Victoria's original sentence and causes no harm to the public interest. *Id.* Therefore, we hold that the government is estopped from arguing that the safety valve is inapplicable to appellee Gamboa-Victoria.[9]

---

[9]We reject the government's contention that appellee Gamboa-Victoria failed to raise his estoppel argument based on the theory of detrimental reliance with the district court. Before the district court, counsel for Gamboa-Victoria stated that "since the government invited us in to do the safety valve debriefing then offered a plea agreement that included reduction of safety valve, they can't come in now and say it doesn't apply to the case." This sufficiently placed the government and the district court on notice of Gamboa-Victoria's argument that his reliance on the government's representations concerning the safety valve should estop the government from changing its position.

## C.  The district court did not err in reducing appellee Gamboa-Victoria's sentence for acceptance of responsibility.

**[9]** Section 3E1.1 of the sentencing guidelines states, "If a defendant clearly demonstrates acceptance of responsibility for his offense," the district court will apply a two-level reduction. The adjustment for acceptance of responsibility "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt . . . ." U.S.S.G. § 3E1.1, cmt. n.2. In "rare situations," however, a defendant can qualify for this downward adjustment even after going to trial and being convicted. *Id.* The district court found that appellees accepted responsibility even though the jury found them guilty. The government contends that this was error. Because the safety valve is unavailable to appellees Gamboa-Cardenas, Cuero-Aragon, and Barahona-Estupinan, the statutory minimum sentence applies and on remand the district court cannot grant a reduction for acceptance of responsibility below the statutory minimum for those appellees. However, with respect to appellee Gamboa-Victoria, the government is estopped from arguing that the safety valve is unavailable. Therefore, we must consider whether the district court erred when it granted Gamboa-Victoria a two-level reduction for acceptance of responsibility.

At trial, the government charged appellees with violations of 46 App. U.S.C. § 1903. According to the district court's jury instructions, the essential factual elements of guilt with respect to this offense are that appellees (1) were on board a vessel subject to the jurisdiction of the United States, (2) knowingly possessed cocaine, and (3) possessed it with intent to deliver it to another person. Neither side challenges the jury instructions, but the government contends that appellees denied the "essential factual elements" of the offense by claiming duress at trial. U.S.S.G. § 3E1.1, cmt. n.2. Thus, the government argues that appellees did not accept responsibility

for their crimes. However, the affirmative defense of duress does not dispute any of the three essential elements of the crime charged. To prove duress, appellees had the burden of showing (1) the existence of an immediate threat of death or serious bodily injury if they did not participate in the crime, (2) a well-grounded fear that the threat of death or serious bodily injury would be carried out, and (3) no reasonable opportunity to escape the threatened harm. *See United States v. Contento-Pachon*, 723 F.2d 691, 693 (9th Cir. 1984). By relying on the defense of duress, appellees did not "deny[ ] the essential factual elements of guilt." U.S.S.G. § 3E1.1, cmt. n.2. Appellees could admit the elements of the offense under 46 App. U.S.C. § 1903 without disqualifying their affirmative defense of duress at trial. Therefore, we cannot say that the district court erred when it determined that Gamboa-Victoria and the other appellees accepted responsibility despite electing to go to trial. This is especially true given that "the determination of the sentencing judge [on this issue] is entitled to great deference on review" since "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility." U.S.S.G. § 3E1.1, cmt. n.5.

We are aware of our previous decisions that limit as a matter of law the availability of a sentencing reduction for acceptance of responsibility when a defendant unsuccessfully presents a defense of duress at trial. However, we find that those decisions do not preclude a finding that appellee Gamboa-Victoria accepted responsibility in this case. In *United States v. Johnson*, 956 F.2d 894, 904 (9th Cir. 1992), we held that "the defense of duress is an affirmative defense which negates criminal conduct by the fact of coercion." Because the jury's guilty verdict demonstrated that it rejected the defendant's in-court statements of duress, we held that the defendants were "not entitled to a reduction for acceptance of responsibility during the trial." *Johnson*, 956 F.2d at 904. However, in *Johnson* we also determined that "if in fact the defendants accepted responsibility by statements made after the conviction they are entitled to this reduction." *Id.* at 905.

In *United States v. Martinez-Martinez*, 369 F.3d 1076, 1089-90 (9th Cir. 2004), we noted that in light of a 1992 amendment to the sentencing guidelines commentary, *Johnson*'s holding was no longer good law to the extent that a defendant demonstrated acceptance of responsibility through post-trial conduct. We stated that "*Johnson* was decided prior to the amendments made to the Sentencing Guidelines in 1992, in which the precise language we relied upon was deleted from § 3E1.1(b)" and that "our decision in *Johnson* is directly at odds with the amended Commentary to § 3E1.1," which now directs that acceptance of responsibility "be based primarily on *pre-trial statements and conduct*." *Martinez-Martinez*, 369 F.3d at 1090 (citing U.S.S.G. § 3E1.1 cmt. n.2 ). Thus, the assertion of a duress defense at trial precludes a sentencing reduction for acceptance of responsibility based on the statements and conduct of a defendant "during the trial," *Johnson*, 956 F.2d at 904, and such a reduction is also precluded based on statements made "during the sentencing phase," *Martinez-Martinez*, 369 F.3d at 1090.

**[10]** Appellee Gamboa-Victoria's situation is distinguishable from *Johnson* and *Martinez-Martinez* because the district court granted him a sentencing reduction for acceptance of responsibility based primarily on *pre-trial* statements and conduct. Comment note 2 of U.S.S.G. § 3E1.1 specifically states that sentence decreases for acceptance of responsibility are available after trial if such decreases are "based primarily upon *pre-trial statements and conduct*" (emphasis added). Here, the district court applied the downward adjustment based primarily on *pre-trial* statements rather than relying solely on statements made during or after the trial. At sentencing, the district court stated its grounds for applying the downward adjustment for acceptance of responsibility to all four appellees:

> I find that all of the defendants have accepted responsibility for their actions in this case. *They have accepted responsibility at debriefings. They have*

*accepted responsibility after they were arrested in post-arrest statements.* They have accepted responsibility here in court during trial. They have accepted responsibility at this time, at the time of sentencing. So I adjust downward two levels for acceptance of responsibility.

(Emphasis added). Unlike in *Johnson* and *Martinez-Martinez*, appellees made extensive statements *before* trial in which they accepted responsibility for their criminal activity. Although the district court also relied on statements made during trial and at sentencing, appellees repeated the same information in those situations that they had already provided in their pre-trial interviews. The record thus indicates that the district court relied primarily on statements made *before* trial when it applied the reduction for acceptance of responsibility. This is particularly true with respect to appellee Gamboa-Victoria, who did not testify at trial and whose post-trial statements were substantively indistinguishable from the statements he had already given to the authorities before trial. Because the district court based its finding of acceptance of responsibility primarily on pre-trial statements and conduct, it did not violate U.S.S.G. § 3E1.1, comment note 2, or the holdings of *Johnson* and *Martinez-Martinez* when it applied the downward adjustment for acceptance of responsibility.

## IV. Conclusion

We vacate the sentences of appellees Gamboa-Cardenas, Cuero-Aragon and Barahona-Estupinan, and we remand to the district court for resentencing without the safety valve. We affirm the sentence of appellee Gamboa-Victoria.

**AFFIRMED in part; VACATED and REMANDED for resentencing in part.**

FISHER, Circuit Judge, concurring in part, dissenting in part:

I agree with the majority that the government is estopped from arguing that the safety valve is unavailable to appellee Gamboa-Victoria. I further agree that the district court did not err by applying a two-level downward adjustment for acceptance of responsibility and I would also affirm Gamboa-Victoria's 41 month sentence.

I respectfully disagree, however, with the majority's conclusion that the safety valve provision of 18 U.S.C. § 3553(f) unambiguously does not apply to offenses under 46 U.S.C. app. § 1903 (repealed 2006).[1] The majority's reading of the relevant statutes is plausible, but it is not the only plausible reading and this demonstrates that the statutory language is ambiguous. Section 1903 required "punish[ment] in accordance with the penalties set forth in section . . . 960."[2] Since 1994, all penalties set forth in § 960 are subject to safety valve relief. One could understand the combination of these provisions to mean that § 1903 offenses should be penalized the same as offenses under § 960, which is expressly listed in the safety valve statute, and thus that the safety valve applies to § 1903 penalties.

Section A of the majority opinion underscores the validity of this other plausible reading, acknowledging that in the past the government itself has acted under the assumption that the safety valve *does* apply to § 1903 offenses and has not generally challenged its availability. Our court and others have also assumed, albeit without discussion, that § 1903 offenses are

---

[1]Title 46 app. U.S.C. § 1903 has been reenacted in 46 U.S.C. §§ 70501-07.

[2]As reenacted, the relevant statutory language states that those convicted under the statute "shall be punished *as provided in* [21 U.S.C. 960]," 46 U.S.C. § 70506 (emphasis added), rather than "*in accordance with the penalties set forth in* [21 U.S.C. § 960]," 46 app. U.S.C. § 1903 (g)(1) (emphasis added).

eligible for safety valve reductions. *See, e.g., United States v. Zakharov*, 468 F.3d 1171, 1181-82 (9th Cir. 2006) (concluding that the district court had not erred in finding that the defendant failed on the merits to qualify for a safety valve reduction); *United States v. Milkintas*, 470 F.3d 1339, 1344-46 (11th Cir. 2006) (per curiam) (same). Further, that the majority's interpretation of the statutory history differs from the district court's interpretation in *United States v. Olave-Valencia*, 371 F. Supp. 2d 1224 (S.D. Cal. 2005), also suggests that the statute is ambiguous.[3] All of the above cuts against the majority's conclusion that the plain statutory language unambiguously shows that the safety valve is inapplicable to offenses under § 1903.

Because I conclude that the statutory language is ambiguous as to whether § 1903 offenses are eligible for safety valve relief, I would look to the history and purpose of § 1903 to determine whether the safety valve applies. The combined effect of Congress' inadvertent repeal of the drug importing laws in the Comprehensive Act of 1970 and Congress' subsequent enactment of 21 U.S.C. § 955a, the precursor to § 1903 that states that "any person that commits an offense as defined in this section shall be punished *in accordance with* the penalties set forth in section . . . 960," can be read as requiring that § 1903 offenses be punished in the same manner as offenses under § 960. No statutory language or legislative history compels a conclusion that when Congress created a safety valve under § 3553(f) that applied to offenses under § 960 it intended § 3553(f) to create a disparity between the effect of penalties for § 955 offenders and § 1903 offenders with simi-

---

[3]The majority's conclusion that applying the safety valve reductions to violations of 21 U.S.C. § 955 but not to §1903 offenses is "perfectly logical" does not account for offenses analogous to § 1903 that are expressly eligible for safety valve reductions notwithstanding they go beyond mere possession. *See* 21 U.S.C. §§ 952, 953 and 957 (knowingly or intentionally importing or exporting a controlled substance), and § 959 (manufacturing, possessing with intent to distribute or distributing a controlled substance).

lar characteristics. Rather, like the government until recently, I believe the most plausible reading of the relevant statutes is that § 1903 offenses should be penalized in the same manner as offenses under § 960, which is expressly listed in the safety valve provision. Accepting that the safety valve applies to offenses under § 1903, I would affirm the sentences of appellees Gamboa-Cardenas, Cuero-Aragon and Barahona-Estupinan as well as that of appellee Gamboa-Victoria.