**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

NOV 16 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MORSHED ALAM,<br><br>Petitioner,<br><br>v.<br><br>WILLIAM P. BARR, Attorney General,<br><br>Respondent. | No. 19-72744<br><br>Agency No. A215-826-397<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted September 1, 2020[**]
Seattle, Washington

Before: BYBEE and COLLINS, Circuit Judges, and STEARNS,[***] District Judge.
Dissent by Judge COLLINS

Morshed Alam, a Bangladeshi citizen, petitions for review of the decision of

the Board of Immigration Appeals (BIA) denying his claim of asylum and

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***]     The Honorable Richard G. Stearns, United States District Judge for the District of Massachusetts, sitting by designation.

withholding of removal. That decision was based on an adverse credibility determination. We have jurisdiction pursuant to 8 U.S.C. 1252(a)(2)(B)(ii). Where, as here, the BIA adopted and affirmed the Immigration Judge (IJ)'s decision pursuant to *Matter of Burbano*, 20 I & N Dec. 872, 874 (BIA 1994), we review the IJ's decision as if it were the agency decision. *See Kwong v. Holder*, 671 F.3d 872, 876 (9th Cir. 2011). Petitioner contends that: (1) the IJ's adverse credibility determination was not supported by substantial evidence; (2) the IJ violated his due process right to competent interpretation by drawing an adverse inference from Petitioner's perceived English language proficiency; and (3) the IJ erred as a matter of law by conflating Petitioner's understanding of English with a mastery of the language. We review an adverse credibility determination, as we must, "under the deferential substantial evidence standard."[1] *Zhi v. Holder*, 751 F.3d 1088, 1091 (9th Cir. 2014). We deny the petition for review.

The IJ's adverse credibility determination is supported by substantial evidence. Petitioner claims asylum based on his father's membership in the Bangladesh National Party (BNP), one of the country's opposition political parties. According to Petitioner, persons associated with the ruling Awami League attacked

---

[1] "This strict standard bars a reviewing court from independently weighing the evidence and requires us to deny the Petition unless Petitioner [has] presented evidence so compelling that no reasonable factfinder could find that Petitioner was not credible." *Angov v. Lynch*, 788 F.3d 893, 900 (9th Cir. 2015) (quoting *Singh v. INS*, 134 F.3d 962, 966 (9th Cir. 1998)) (internal quotation marks omitted).

his father on May 30, 2015, putting him in the hospital for four days. Petitioner also states that his father went into hiding on June 15, 2015, after learning of a conspiracy to kill him. At the asylum hearing, when asked to describe his problems with the Awami League, Petitioner identified an incident that had occurred on December 16, 2016. In addition to the specific date, Petitioner recounted the setting ("I was returning home after finishing the victory day celebration at my school,"), the individuals involved ("There are six Awami League people,"), and the exchange he had had with them ("They asked me where my father was, and they wanted to know his location. I told them I don't know. Well, they said that I'm a liar, and they threatened to beat me up, and they also told me, 'If we find your father, we will kill him.'" *Id.*). He then proceeded to describe additional incidents on February 21, 2017, August 25, 2017, January 25, 2018, and March 26, 2018, with a similar level of detail.

When pressed by the Government on cross-examination, Petitioner recalled that between June of 2015 and December of 2016, members of the Awami League came to his home "every month two to three times" demanding to know of his father's hiding place and making threats against his family. When Petitioner and his family "refused to tell them, [] they would say bad things to us." Petitioner testified that he "was very scared" by these visits, that his family "would not go out of [their] house often," and "whenever [they] would see these people around,

19-72744

[they] would go inside [their] house." When asked to explain why he had not provided "an explanation or a summary" of these incidents in his supplemental declaration, Petitioner claimed he "didn't remember all of those incidents" at the time.

While "[i]t is well settled that an applicant's testimony is not per se lacking in credibility simply because it includes details that are not set forth in the asylum application," *Lopez-Reyes v. INS*, 79 F.3d 908, 911 (9th Cir. 1996), "inconsistencies regarding events that form the basis of the asylum claim are sufficient to support an adverse credibility determination." *Zamanov v. Holder*, 649 F.3d 969, 973 (9th Cir. 2011). Petitioner claims asylum based on friction with members of the Awami League, but he omitted from his direct testimony any description of numerous threatening visits to his home over the course of a year and a half. The substance of the overlooked year and a half of repeated menacing visits—which Petitioner finally disclosed on cross-examination—"goes to the heart" of Petitioner's claim. *Id.* at 973–74 (asylum claimant's late-adduced testimony about three arrests for participating in anti-government demonstrations "went to the core of his alleged fear of political persecution" and "materially altered his entire story in a way that cast doubt on his credibility"). These visits, numbering from 36 to 54 by Petitioner's (eventual) account (in contrast to the five "sporadic" incidents after December of 2016 recounted in his direct examination),

4                                                          19-72744

also increased by severalfold the persistence and pervasiveness of the asserted Awami League harassment. *See Chebchoub v. I.N.S.*, 257 F.3d 1038, 1043 (9th Cir. 2001) (the inconsistency in the number of times petitioner claimed to have been arrested supported an adverse credibility determination), *superseded by statute on other grounds as stated in Shrestha v. Holder*, 590 F.3d 1034, 1046 (9th Cir. 2010). Petitioner's professed inability to recall as many as 54 intimidating visits to his home over 18 months in any detail when contrasted with his more fulsome description of the post-December 16, 2016 incidents supports the IJ's credibility finding.

While we agree that the IJ's skepticism regarding Petitioner's English language proficiency does not support the credibility finding, we also reject Petitioner's language-based due process challenge. The asylum proceeding was conducted in its entirety through a Bengali interpreter. Petitioner makes no assertion that the interpreter was unskilled or incompetent.

Accordingly, the Petition for Review is <u>DENIED</u>.

19-72744

*Alam v. Barr*, No. 19-72744

COLLINS, Circuit Judge, dissenting:

In my view, substantial evidence does not support the adverse credibility

determination made by the Immigration Judge ("IJ") regarding Petitioner Morshed

Alam, and I therefore would grant Alam's petition for review.  I respectfully

dissent.

In rejecting Alam's claim that he had been persecuted by members of the

Awami League in Bangladesh, the IJ's decision—which was adopted by the Board

of Immigration Appeals ("BIA")—relied on a number of different reasons for

deeming Alam not to be credible.  However, the Government, in its answering

brief in this court, declines to defend five of the grounds given by the IJ[1] and

instead explicitly limits its defense of the IJ's credibility determination to only two

grounds: (1) Alam's asserted lack of candor as to his English-language ability; and

(2) Alam's alleged omission of "the Awami League's multiple visits to his home"

from his supplemental statement in support of his asylum application and from his

opening testimony at the hearing.  In my view, neither of these two grounds is

sufficient to uphold the adverse credibility determination.

1.  The majority properly declines to rely on Alam's supposed lack of candor

as to his English-language ability as a basis for upholding the IJ's adverse

---

[1] Indeed, to its credit, the Government itself affirmatively attacks these five
alternative grounds as improper or not adequately supported.

credibility finding.  *See* Mem. Dispo. at 5.  The IJ and the BIA concluded that Alam's occasional ability to respond at the hearing to an English-language question before it was translated cast doubt on his claimed inability to understand English.  There are three such instances in the record, but they do not provide a basis for concluding that Alam was not candid in stating that he did not "understand English."  Because Alam made the supposedly non-credible statement that he did not understand English immediately *after* one of these three instances, his assertion that he did not "understand English" obviously cannot reasonably be understood as a claim that he did not understand *any* English.  The only reasonable reading of the comment is that he denied being generally conversant in English and not that he lacked any understanding of any English.  Against that backdrop, the remaining two instances in which he responded to an English statement before the translation was completed likewise do not negate what he claimed about his English-language abilities.

2.  The majority, however, agrees with the only remaining argument on which the Government relies, which is that Alam's credibility was assertedly undermined by his alleged omission, from his supplemental statement, of the Awami League's multiple visits to his home between June 2015 and December 2016.  I respectfully disagree.

As an initial matter, contrary to what the BIA suggested, Alam's

supplemental statement did *not* omit the Awami League members' visits to his family's home between June 2015 and December 2016. Alam's supplemental statement specifically says that, after his father went into hiding in June 2015, "the Awami League hoodlums *repeatedly* came to our home, and harassed and threatened us for him" (emphasis added).[2] The majority is therefore simply wrong in claiming that the supplemental statement "overlooked [a] year and a half of repeated menacing visits." *See* Mem. Dispo. at 4.

The majority nonetheless suggests that there is an affirmative inconsistency between the claim of "repeated[]" visits from June 2015 through December 2016 in the supplemental statement and Alam's later testimony that members of the Awami League showed up at the house two to three times per month during that time period. *See* Mem. Dispo. at 4. I fail to see any inconsistency. Alam, who had previously said that there were repeated visits, simply quantified what that meant, when pressed by the Government to do so at the hearing. That is merely the provision of additional detail, and not an inconsistency, and we have held that "the mere omission of details is insufficient to uphold an adverse credibility finding." *Lai v. Holder*, 773 F.3d 966, 971 (9th Cir. 2014) (internal quotation

_____

[2] In the next set of paragraphs, Alam's statement first recounts a subsequent series of incidents that were specific to him, most of which occurred away from the home and the first of which was in December 2016. The statement then mentions a final visit to his family's home in March 2018 in which his mother was assaulted and he and his sisters threatened, and after which he and his family fled.

marks omitted) (quoting *Singh v. Gonzalez*, 403 F.3d 1081, 1085 (9th Cir. 2005)). Moreover, that rule carries special force where, as here, the additional detail was only provided in response to the Government's cross-examination soliciting the additional detail. *Id*. at 973; *see also Iman v. Barr*, 972 F.3d 1058, 1068–69 (9th Cir. 2020) (noting that, in such circumstances, the danger that the alien at the hearing is attempting to "bolster an earlier, and typically weaker, asylum application" is "not present").

Having wrongly faulted Alam for supplying *additional* details about the pre-December 2016 house visits as requested on cross-examination, the majority then ironically goes on to conclude that Alam's credibility was undermined by his failure during that cross-examination to supply *even more* details about those house visits. *See* Mem. Dispo. at 5. But the Government did not rely on this argument in its answering brief, asserting instead that it relied "*only*" on the "English-language proficiency" issue and "Petitioner's supplemental statement's and direct examination testimony's omission of the Awami League's multiple visits to his home, given that his testimony under cross examination stated that these visits occurred two or three times a month" (emphasis added). The point is therefore forfeited. *United States v. Gamboa-Cardenas*, 508 F.3d 491, 502 (9th Cir.2007) (where appellees fail to raise an argument in their answering brief, "they have waived it").

In addition to being forfeited, the argument is clearly wrong. Alam was never asked at the hearing to supply incident-by-incident detail for the house visits in the same way that he had provided details for the incidents that were targeted at him specifically. Instead, he was asked general questions about the house visits as a whole, and he answered in the same way, giving general descriptions of the visits along with some specific examples of the sorts of threats made during them. We have squarely held that the failure to provide additional detail "does not constitute a valid ground" for an adverse credibility determination when the applicant "was not given notice that he should provide such information, nor asked at the hearing to do so, either by the IJ or by counsel for the INS." *Akinmade v. INS*, 196 F.3d 951, 957 (9th Cir. 1999). The fact that Alam did not affirmatively volunteer more detail about these house visits in his supplemental statement or in his testimony thus does not provide a proper ground for questioning his credibility.

3. Because I find inadequate the only two bases for the agency's adverse credibility determination that the Government is willing to defend in this court, I would reject that determination. *See Marcos v. Gonzales*, 410 F.3d 1112, 1116 (9th Cir. 2005) ("'[W]hen each of the IJ's or BIA's proffered reasons for an adverse credibility finding fails, we must accept a petitioner's testimony as credible.'" (citation omitted)). And because the IJ specifically stated that, in the event of an appellate reversal of the adverse credibility finding, he "would

5

otherwise grant asylum" to Alam, I would grant Alam's petition and remand the matter with instructions to grant the application for asylum and to reconsider, to the extent still pressed, Alam's request for other forms of relief.

4. If instead I had agreed with the majority that one of the two grounds asserted by the Government provided a valid basis for making an adverse credibility determination, I would have been bound by Ninth Circuit law to uphold that determination, and the majority properly follows that authority. *See Lianhua Jiang v. Holder*, 754 F.3d 733, 738 (9th Cir. 2014) ("'[W]e must uphold the IJ's adverse credibility determination *so long as even one basis* is supported by substantial evidence.'" (citation omitted)); *see also Lizhi Qiu v. Barr*, 944 F.3d 837, 842 (9th Cir. 2019) (same). But a case such as this one puts the wisdom of that bright-line rule to the test. Here, the Government's brief affirmatively disavowed, as legally or factually erroneous, no less than *five* of the alternative bases given by the agency for finding Alam not to be credible. Of the two additional grounds that the Government was willing to defend, the majority here finds one more of those to be invalid and finds only one to be valid. So, as the case has been configured by the majority, Ninth Circuit precedent requires the court to uphold a credibility determination in which the agency gave *six* invalid grounds for its finding and only *one* valid ground.

I find this disquieting result difficult to defend. Having been presented with

6

this veritable dog's breakfast, we are supposed to overlook the agency's shoddy performance merely because, buried amidst all of the error is one sliver of a ground that (at least according to the majority) is not obviously wrong. But on this record, even if I agreed with the majority on that one ground, I would have no confidence in the agency's error-filled adverse credibility determination in this case. The fact that the agency's overall explanation included one weak (at best) reason for finding Alam not credible does not justify conclusively presuming that the presence of six invalid reasons was harmless error. Indeed, we do not apply a similar conclusive presumption in weighing a mixture of valid and invalid reasons in the context of assessing agency credibility determinations of applicants for disability benefits. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1162–63 (9th Cir. 2008). If our rigid precedent did not forbid it,[3] then (if I otherwise agreed with the majority) I would find the cumulation of significant errors in this case not to be harmless, despite the presence of one weak valid ground, and I would consider this to be an appropriate case in which to remand to the agency for a new credibility determination on an open record.

I respectfully dissent.

---

[3] Although it is unpublished, I disagree with *Ishimwe v. Barr*, 779 F. App'x 452 (9th Cir. 2019), in which, as the dissent in that case rightly noted, the panel majority improperly disregarded our binding decision in *Lianhua Jiang*. *See id*. at 458 (R. Nelson, J., dissenting).

7